No. 23-5080

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE TENTH CIRCUIT

ROWAN FOWLER, *et al.*,
Plaintiffs-Appellants

v.

KEVIN STITT,
in his official capacity as Governor of the State of Oklahoma, *et al.*,
Defendants-Appellees

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA
The Honorable Judge John W. Broomes, No. 4:22-cv-00115-JWB-MTS

BRIEF FOR THE UNITED STATES AS *AMICUS CURIAE* IN SUPPORT OF
DEFENDANTS-APPELLEES URGING AFFIRMANCE

HARMEET K. DHILLON
  Assistant Attorney General

JESUS A. OSETE
  Principal Deputy Assistant Attorney
  General

ANDREW G. BRANIFF
DAVID N. GOLDMAN
  Attorneys
  Department of Justice
  Civil Rights Division
  Appellate Section
  Ben Franklin Station
  P.O. Box 14403
  Washington, D.C. 20044-4403
  (202) 532-3803

# TABLE OF CONTENTS

**PAGE**

INTEREST OF THE UNITED STATES ............................................................... 1

STATEMENT OF THE ISSUES ......................................................................... 2

STATEMENT OF THE CASE ............................................................................ 2

    A.    Factual Background ............................................................................ 2

    B.    Procedural Background ...................................................................... 3

SUMMARY OF ARGUMENT ........................................................................... 4

ARGUMENT

    A.    Oklahoma's Policy Warrants Rational Basis Review. ..................... 5

    B.    Oklahoma's Policy Survives Rational Basis Review. ...................... 8

    C.    This Court Expanded *Bostock* Beyond Its Title VII Moorings. ........................................................................................... 10

CONCLUSION ................................................................................................ 12

CERTIFICATE OF COMPLIANCE

# TABLE OF AUTHORITIES

**CASES:** **PAGE**

*Bostock v. Clayton County*, 590 U.S. 644 (2020) .................................... 3, 10-11

*City of Cleburne v. Cleburne Living Ctr., Inc.*, 473 U.S. 432 (1985) ................. 5

*Fowler v. Stitt*, 676 F. Supp. 3d 1094 (N.D. Okla. 2023) ................................. 9

*Fowler v. Stitt*, 104 F.4th 770 (10th Cir. 2024) .................................... 3-4, 8, 10

*Gore v. Lee*, 107 F.4th 548 (6th Cir. 2024) .................................................. 6-7, 10

*MH v. First Judicial Dist. Ct. of Laramie Cnty.*,
   465 P.3d 405 (Wyo. 2020) ............................................................................ 9

*Pavan v. Smith*, 582 U.S. 563 (2017) ............................................................... 9

*Personnel Adm'r of Mass. v. Feeney*, 442 U.S. 256 (1979) ............................... 8

*Romer v. Evans*, 517 U.S. 620 (1996) ......................................................... 5, 8-9

*Schuette v. BAMN*, 572 U.S. 291 (2014) ........................................................ 7

*Stitt v. Fowler*, 145 S. Ct. 2840 (2025) ............................................................ 4

*Trump v. Hawaii*, 585 U.S. 667 (2018) ............................................................ 9

*United States v. Skrmetti*, 145 S. Ct. 1816 (2025) ................................. 3-6, 8-11

**CONSTITUTION AND STATUTES:**

U.S. Const. Amend. XIV, § 1 ............................................................................ 5

Okla. Stat. Ann.
   tit. 63, § 1-311(B) (West 2025) ............................................................. 7, 9
   tit. 63, § 1-311(G) (West 2025) ................................................................ 7
   tit. 63, § 1-321 (West 2025) .................................................................. 6-7
   tit. 63, § 1-321(H) (West 2025) ................................................................ 7
   tit. 70, § 27-106(E)(1) (West 2025) ..................................................... 9-10

| REGULATIONS: | PAGE |
|---|---|

*Defending Women from Gender Ideology Extremism and Restoring Biological Truth to the Federal Government*, 90 Fed. Reg. 8615 (Jan. 20, 2025) ...................................................... 1-2, 9

Okla. Admin. Code § 310:105-3-3 (2025) ......................................................... 7

# INTEREST OF THE UNITED STATES

This appeal involves a constitutional challenge to Oklahoma policy and statutes which mandate that a state agency maintain accurate birth certificate records that reflect an individual's sex. The question before the Court is whether Oklahoma's policy to refuse to amend requests to alter the sex designation on a birth certificate is constitutional.

The United States has a substantial interest in the answer to that question. President Trump's Executive Order No. 14,168 seeks to protect women in their use of "intimate single-sex spaces and activities designed for women, from women's domestic abuse shelters to women's workplace showers." *Defending Women from Gender Ideology Extremism and Restoring Biological Truth to the Federal Government*, 90 Fed. Reg. 8615, 8615 (§ 1) (Jan. 20, 2025). For example, "[t]he Attorney General and Secretary of Homeland Security shall ensure that males are not detained in women's prisons or housed in women's detention centers." *Id.* at 8616 (§ 4(a)). And "[a]gencies shall . . . tak[e] appropriate action to ensure that intimate spaces designated for women, girls, or females" remain for their use only, and not for men. *Id.* at 8617 (§ 4(d)).

A powerful and effective means of carrying out these aims is to rely on accurate government identification that identifies the holder's sex. So Executive Order No. 14,168 also tasks the Secretaries of State and Homeland

Security to "implement changes to require that government-issued identification documents, including passports, visas, and Global Entry cards, accurately reflect the holder's sex." 90 Fed. Reg. at 8616 (§ 3(d)). The United States thus has a substantial interest in the legal framework applicable to laws and policies that maintain the accuracy of government records by requiring identification of an individual's sex.

## STATEMENT OF THE ISSUES

On remand, this Court has invited the parties to address: "1) Whether the law at issue here involved classifications based on transgender status; 2) The proper level of scrutiny under the Equal Protection Clause of the Fourteenth Amendment; and 3) Whether the allegations in the complaint meet that standard." Doc. 119, at 2.[1]

## STATEMENT OF THE CASE

### A. Factual Background

In November 2021, Governor Stitt issued Executive Order 2021-24, which required the Oklahoma State Department of Health (OSDH) to "[c]ease amending birth certificates . . . in any way inconsistent with 63 O.S. § 1-321." Doc. 42, at 8 (alterations in original). The Legislature then amended Section

---

[1] "Doc. ___, at ___" refers to docket entries and the corresponding page on this Court's docket, No. 23-5080 (10th Cir.).

1-321 to emphasize that the sex designation on birth certificates is "the biological sex designation" and therefore "shall be either male or female and shall not be nonbinary." *Ibid.* (alteration in original; citation omitted). OSDH has since denied requests to amend sex on birth certificates. *Ibid.*

A panel of this court found that denying sex-designation amendments on birth certificates was not rationally related to any legitimate state interest and therefore violated the Equal Protection Clause. *Fowler v. Stitt*, 104 F.4th 770, 796 (10th Cir. 2024). In arriving at the conclusion, the panel first determined that the policy "discriminates against transgender people." *Id.* at 788. The panel then applied the Supreme Court's reasoning in *Bostock v. Clayton County*, 590 U.S. 644 (2020)—a case about sex discrimination under Title VII—to conclude that the policy intentionally discriminates against plaintiffs based in part on sex. *See Fowler*, 104 F.4th at 793-794.

### B. Procedural Background

The Supreme Court then decided *United States v. Skrmetti*, 145 S. Ct. 1816 (2025), a challenge to Tennessee Senate Bill 1 (SB1), which allows the administration of "puberty blockers or hormones to treat certain conditions but not to treat gender dysphoria, gender identity disorder, or gender incongruence" in minors. *Id.* at 1829.

The Court upheld the law, concluding that the ban is not subject to heightened scrutiny under the Equal Protection Clause and satisfies rational

basis review. *Skrmetti*, 145 S. Ct. at 1836-1837. Tennessee's law does not classify based on sex or transgender status, but rather based on age and prescribed medical use. *See id.* at 1828-1829. Accordingly, the legislature is provided "wide latitude" under "rational basis" review. *Id.* at 1828 (citation omitted).

The Court acknowledged that, just as some gender-specific terms in legislation might not constitute sex discrimination under the Equal Protection Clause, certain sex-neutral wording might "mask [sex] discrimination that is unlawful." *Skrmetti*, 145 S. Ct. at 1829. SB1, however, does not "prohibit conduct for one sex that it permits for the other." *Id.* at 1831. The Court declined to consider whether *Bostock* extends beyond the Title VII context. *See id.* at 1834.

Following *Skrmetti*, the Supreme Court vacated and remanded this Court's decision for further consideration. *See Stitt v. Fowler*, 145 S. Ct. 2840 (2025).

## SUMMARY OF ARGUMENT

*Skrmetti* makes clear that the panel majority erred by applying intermediate scrutiny under the guise of rational basis review, *Fowler*, 104 F.4th at 794-797, and expanding the Supreme Court's ruling in *Bostock* far beyond its Title VII context, *id.* at 788-792.

The proper framework for Oklahoma's birth certificate policy is rational basis review. The policy does not differentiate between male and female applicants and easily passes rational basis muster.

**ARGUMENT**

**A.     Oklahoma's Policy Warrants Rational Basis Review.**

1.  It is a "practical necessity that most legislation" or executive policy "classifies for one purpose or another, with resulting disadvantage to various groups or persons." *Romer v. Evans*, 517 U.S. 620, 631 (1996). Yet the Equal Protection Clause imposes a limit by prohibiting States from "deny[ing] to any person within [their] jurisdiction the equal protection of the laws." U.S. Const. Amend. XIV, § 1. That Clause is "essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr., Inc.*, 473 U.S. 432, 439 (1985).

The Supreme Court has "reconciled the principle of equal protection with the reality of legislative classification" by separating classifications into two camps: those that "burden[] a fundamental right []or target[] a suspect class" and those that do not. *Skrmetti*, 145 S. Ct. at 1828 (citation omitted). The Court has only ever recognized two classes that trigger increased scrutiny under the Equal Protection Clause: race and sex. *Id.* at 1849-1850 (Barrett,

J., concurring).[2] Classifications drawn along these lines receive more rigorous review—strict scrutiny for race, heightened scrutiny for sex—under which courts analyze the importance of the State's objectives and the fit of the classification to achieve those objectives. *Id.* at 1828 (majority opinion). Other classifications receive rational basis review and pass muster "so long as [they] bear[] a rational relation to some legitimate end." *Ibid.* (citation omitted).

2. Oklahoma's birth certificate policy draws no distinctions across any class—suspect or not. OSDH's authority to amend birth certificates is limited to circumstances prescribed by statute, including a legal name change or newfound paternity. Okla. Stat. Ann. tit. 63, § 1-321 (West 2025). There is no distinction in OSDH's response to an amendment application by a male and a female (or an applicant who identifies as transgender and one who does not).

The Sixth Circuit confronted a similar law in *Gore v. Lee*, 107 F.4th 548 (6th Cir. 2024). Tennessee's "birth-certificate policy" "permit[ted] individuals to change some aspects of their birth certificates (such as a new name or the identity of adoptive parents)" but "treat[ed] the sex listed on a birth certificate as a historical fact unchangeable by an individual's transition to a different

---

[2] The Court has treated "alienage" as a suspect class, but "only vis-à-vis the States" and has "grounded [its] scrutiny of state laws as much in the Supremacy Clause as in the Equal Protection Clause." *Skrmetti*, 145 S. Ct. at 1850 n.1 (Barrett, J., concurring).

gender identity." *Id.* at 551. The court held that the policy "makes one relevant distinction. It distinguishes between those applicants who produce evidence that the doctor erred in identifying their biological sex at birth and those who do not." *Id.* at 555. That distinction "does not impose any special restraints on, and does not provide any special benefits to, applicants due to their sex." *Ibid.* The policy "treat[s] like cases alike." *Ibid.* (citation omitted).

Oklahoma's policy is similarly neutral on its face and in its application. State law requires attending physicians to "certify to the facts of birth and provide the medical information required by the birth certificate," including the child's "biological sex designation," which "shall be either male or female." Okla. Stat. Ann. tit. 63, § 1-311(B) and (G) (West 2025); *id.* § 1-321(H) (West 2025). OSDH will only amend birth certificates in limited circumstances, which do not include a desire to change the designated sex—for men or women, transgender or not. Okla. Stat. Ann. tit. 63, § 1-321 (West 2025); Okla. Admin. Code § 310:105-3-3 (2025).

Oklahoma's law uses biological sex on birth certificates for *all* Oklahomans and declines to provide a special exemption for those who identify as transgender. But the State's refusal to grant such an exemption cannot plausibly be characterized as "discrimination." *See Schuette v. BAMN*, 572 U.S. 291, 298-315 (2014) (plurality opinion) (concluding that equal protection does not forbid banning affirmative action); *id.* at 316-317 (Scalia, J.,

concurring in the judgment) (same). The Equal Protection Clause does not guard against disparate impact alone, *Personnel Adm'r of Mass. v. Feeney*, 442 U.S. 256, 272 (1979), let alone require accommodations therefrom.

Indeed, this is an *a fortiori* case following *Skrmetti*. There, Tennessee prohibited certain medical interventions for diagnoses that "*only* transgender individuals seek treatment for." *Skrmetti*, 145 S. Ct. at 1833 (emphasis added). The Court nevertheless recognized that the law was facially neutral and subject only to rational basis review because it "does not prohibit conduct for one sex that it permits for the other." *Id.* at 1831.

### B. Oklahoma's Policy Survives Rational Basis Review.

This Court previously acknowledged that Oklahoma's "[p]olicy appears facially neutral because it prevents all Oklahomans—regardless of their sex or gender identity—from amending the sex designation on their birth certificates." *Fowler*, 104 F.4th at 785. Respectfully, that is where the inquiry should have ended. Instead, the panel continued that it could "infer purposeful discrimination on the basis of transgender status" in Oklahoma's declining to later change the accurate sex designation. *Id.* at 784-785. The panel opined that Oklahoma's "[p]olicy 'seems inexplicable by anything but animus' toward transgender people.'" *Id.* at 788 (quoting *Romer*, 517 U.S. at 632).

However, a court may only infer animus when the challenged law "lack[s] *any* purpose other than a bare desire to harm a politically unpopular

- 8 -

group." *Trump v. Hawaii*, 585 U.S. 667, 705 (2018) (emphasis added; internal quotation marks, citation, and ellipsis omitted). In other words, the law must be so "divorced from any factual context from which [a court] could discern a relationship to legitimate state interests" that it is "inexplicable by anything but animus." *Id.* at 706 (quoting *Romer*, 517 U.S. at 635). So long as the law "can reasonably be understood to result" from a legitimate state interest, it must be upheld. *Id.* at 705; *see Skrmetti*, 145 S. Ct. at 1836.

Oklahoma's policy is not just rationally related to legitimate interests—it is eminently sensible. Oklahoma's birth-certificate policy supports the preservation of vital statistics. *See Fowler v. Stitt*, 676 F. Supp. 3d 1094, 1125 (N.D. Okla. 2023). The purpose of a birth certificate is to record "the facts of the birth." Okla. Stat. Ann. tit. 63, § 1-311(B) (West 2025); *see, e.g.*, *Pavan v. Smith*, 582 U.S. 563, 568 (2017) (Gorsuch, J., dissenting). Because these facts are immutable, they are valuable tools for government identification. And the State's interest is logically furthered by a law prohibiting subsequent alterations to these "facts of birth." *See MH v. First Judicial Dist. Ct. of Laramie Cnty.*, 465 P.3d 405, 412 (Wyo. 2020) (Kautz, J., concurring).

Oklahoma's policy also furthers the State's interest in protecting women's-only spaces. *See Fowler*, 676 F. Supp. 3d at 1126; *see also* Exec. Order No. 14,168, 90 Fed. Reg. 8615 (Jan. 20, 2025). For example, Oklahoma prohibits male athletes from participating on female athletic teams. Okla.

Stat. Ann. tit. 70, § 27-106(E)(1) (West 2025). Maintaining accurate records that show an athlete's sex provides a reliable way to ensure compliance with this statute. *See Gore*, 107 F.4th at 555.

In contrast, the State has no evident interest in maintaining records of individuals' self-perceived "gender identity." The identity is not immutable, *see Skrmetti*, 145 S. Ct. at 1849, 1851 (Barrett, J., concurring); *id.* at 1855, 1861 (Alito, J., concurring in part and in the judgment), making it of little value for purposes of government identification. And a person's "gender identity" is irrelevant to protecting women's-only spaces.

### C. This Court Expanded *Bostock* Beyond Its Title VII Moorings.

Finally, the panel majority held that, under *Bostock*, because Oklahoma purportedly "discriminates based on transgender status, it necessarily discriminates on the basis of sex as well." *Fowler*, 104 F.4th at 788. As explained, Oklahoma does *not* discriminate based on transgender status. In any event, though, the panel misapplied *Bostock*, which is limited to the Title VII context.

*Bostock* emphasized that its holding was moored in Title VII's specific causation language. *See* 590 U.S. at 654-662. "The only question before [the Court was] whether an employer who fires someone simply for being . . . transgender has discharged or otherwise discriminated against that individual

'because of such individual's sex.'" *Id.* at 681. The Court did "not purport to address bathrooms, locker rooms, or anything else of the kind." *Ibid.* No other "federal or state law[] that prohibit[s] sex discrimination" was "before" the Court, as the Court took pains to point out. *Ibid.* Indeed, "in constitutional challenges, courts need not engage *Bostock* at all." *Skrmetti*, 145 S. Ct. at 1839 (Thomas, J., concurring); *id.* at 1855 (Alito, J., concurring in part and in the judgment). And even if a law does discriminate on transgender status (unlike Oklahoma's), only rational basis review applies. *Id.* at 1855 (Barrett, J., concurring); *id.* at 1867 (Alito, J., concurring in part and in the judgment).

Because the Tenth Circuit explicitly applied *Bostock* to an equal protection claim in this matter, it exceeded the statutory limitations of Title VII as laid out in *Bostock* itself. On remand, this Court should not consider the *Bostock* decision in conducting its rational basis review.

## CONCLUSION

For the foregoing reasons, this Court should affirm the district court's decision and determine that the Oklahoma policy survives rational basis review.

Respectfully submitted,

HARMEET K. DHILLON
  Assistant Attorney General

JESUS A. OSETE
  Principal Deputy Assistant Attorney
  General

s/ Andrew G. Braniff
ANDREW G. BRANIFF
DAVID N. GOLDMAN
  Attorneys
  Department of Justice
  Civil Rights Division
  Appellate Section
  Ben Franklin Station
  P.O. Box 14403
  Washington, D.C.  20044-4403
  (202) 532-3803

Date:  September 29, 2025

# CERTIFICATE OF COMPLIANCE

This supplemental brief complies with the page and type-volume limitations set forth in the Court's August 6, 2025 Order and Federal Rule of Appellate Procedure 29(a) because it is no longer than 12.5 pages in size 13-point font. This brief also complies with the typeface and type-style requirements of the Court's August 6, 2025 Order and Federal Rule of Appellate Procedure 32(a)(6) because it was prepared in Century Schoolbook 13-point font using Microsoft Word for Microsoft 365.

s/ Andrew G. Braniff  
ANDREW G. BRANIFF  
Attorney

Date: September 29, 2025