U.S. COURT OF APPEALS
10TH CIRCUIT
RECEIVED
2026 OCT -2 AM 9: 50

**2026 OK 68**

**FILED**
SUPREME COURT
STATE OF OKLAHOMA
SEP 29 2026
SELDEN JONES
CLERK

**IN THE SUPREME COURT OF THE STATE OF OKLAHOMA**

ROWAN FOWLER; ALLISTER HALL; CARTER RAY,

Plaintiffs/Appellants,

v.

J. KEVIN STITT, in his official capacity as Governor of the State of Oklahoma; KEITH REED, in his official capacity as Commissioner of Health for the Oklahoma State Department of Health; KELLY BAKER, in her official capacity as State Registrar of Vital Records,

Defendants/Appellees,

AMERICAN CIVIL LIBERTIES UNION; AMERICAN CIVIL LIBERTIES UNION OF OKLAHOMA; GLBTQ LEGAL ADVOCATES & DEFENDERS; STATE OF KANSAS; STATE OF ARKANSAS; STATE OF IOWA; STATE OF INDIANA; STATE OF GEORGIA; STATE OF LOUISIANA; STATE OF MISSISSIPPI; STATE OF MISSOURI; STATE OF MONTANA; STATE OF NEBRASKA; STATE OF NORTH DAKOTA; STATE OF SOUTH CAROLINA; STATE OF TENNESSEE; STATE OF TEXAS; STATE OF UTAH; STATE OF WEST VIRGINIA; UNITED STATES OF AMERICA,

Amici Curiae.

No. 124,023

**FOR OFFICIAL PUBLICATION**

## CERTIFIED QUESTIONS FROM THE UNITED STATES COURT OF APPEALS FOR THE TENTH CIRCUIT

¶ 0 The United States Court of Appeals for the Tenth Circuit certified three questions of state law to this Court pursuant to the Revised Uniform Certification of Questions of Law Act, 20 O.S. §§ 1601-1611. We answer Certified Question One in the affirmative. We answer Certified Question Two in the negative and Certified Question Three in the negative.

## CERTIFIED QUESTIONS ANSWERED

Sasha Buchert, Lambda Legal Defense and Education Fund, Inc., Washington, D.C., for Plaintiffs/Appellants Rowan Fowler, Allister Hall, and Carter Ray.

Nicholas J. Hite, Lambda Legal Defense and Education Fund, Inc., Dallas, Texas, for Plaintiffs/Appellants Rowan Fowler, Allister Hall, and Carter Ray.

Peter C. Renn, Lambda Legal Defense and Education Fund, Inc., Los Angeles, California, for Plaintiffs/Appellants Rowan Fowler, Allister Hall, and Carter Ray.

Karen Keith Wilkins, Tulsa, Oklahoma, for Plaintiffs/Appellants Rowan Fowler, Allister Hall, and Carter Ray.

Garry M. Gaskins, II, Zach West, and Cullen D. Sweeney, Office of Attorney General, Oklahoma City, Oklahoma, for Defendants/Appellees J. Kevin Stitt, Governor of the State of Oklahoma, Keith Reed, Commissioner of Health for the Oklahoma State Department of Health, and Kelly Baker, Registrar of Vital Records.

**ROWE, C.J.:**

¶1 The United States Court of Appeals for the Tenth Circuit certified three questions of law to this Court under the Revised Uniform Certification of Questions of Law Act, 20 O.S. §§ 1601-1611. The questions certified are:

1. Whether Okla. Stat. tit. 63, § 1-321, as amended by Okla. Stat. tit. 63, § 1-321(H), prohibits changes to the sex designation on an Oklahoma birth certificate.

2. Whether Okla. Stat. tit. 63, § 1-321 has ever permitted changes to the sex designation on an Oklahoma birth certificate.

3. Whether Okla. Stat. tit. 63, § 1-321 does now or has ever permitted changes to the sex designation on an Oklahoma birth certificate based on gender identity.

## CERTIFIED FACTS AND PROCEDURAL HISTORY

¶2 Rowan Fowler, Allister Hall, and Carter Ray ("Plaintiffs") are three transgender individuals who sought to amend the sex designations on their Oklahoma birth certificates to match their gender identities. Plaintiffs obtained state court orders directing that their sex designations be amended. When Plaintiffs presented these court orders to the Oklahoma State Department of Health ("OSDH"), OSDH denied the applications, citing Executive Order 2021-24, which directed OSDH to stop amending sex designations on birth certificates. The Executive Order reads, in pertinent part:

> It has come to my attention that the Oklahoma State Department of Health (OSDH) has entered into a settlement agreement which was not reviewed or approved by my Administration. This settlement requires OSDH to amend birth certificates in a manner not permitted under Oklahoma law. This Order ensures that this unauthorized action will be corrected.
>
> 63 O.S. § 1-321 establishes how and when a birth certificate may be amended under Oklahoma Law. Neither this statute nor Oklahoma law otherwise provide OSDH or others any legal ability to in any way alter a person's sex or gender on a birth certificate. Moreover, neither this statute, nor OSDH's administrative rules, give the agency authority to enter agreements that circumvent the laws of this state.
>
> Therefore, I, J. Kevin Stitt, Governor of the State of Oklahoma, pursuant to the power vested in me by Article VI of the Oklahoma Constitution, hereby order that OSDH immediately:
>
> 1. Cease amending birth certificates that is in any way inconsistent with 63 O.S. § 1-321.

2. Remove from its website any reference to amending birth certificates that is inconsistent with its authority under 63 O.S. § 1-321.

3. Inform the Governor's office of any pending litigation that is related to amending birth certificates in Oklahoma.

4. Provide the Governor's office with any other information that OSDH feels is responsive to this Executive Order.

I also encourage our lawmakers, upon reconvening for the 2nd Regular Session of the 58th Legislature this coming February to:

1. Immediately pass legislation that will clarify, to the extent necessary, that changes in sex or gender on a birth certificate or a designation of non-binary is contrary to Oklahoma Law.

2. Include in the legislation a provision that requires the Commissioner of Health to promulgate any administrative rules necessary to effectuate the purposes of this statute.

Executive Order 2021-2024.

¶3 Plaintiffs brought suit on equal protection and due process grounds against Governor Stitt, OSDH's Commissioner of Health Keith Reed, and Kelly Baker, State Registrar of Vital Records (collectively hereinafter, "Defendants"), in the United States District Court for the Northern District of Oklahoma. Defendants moved to dismiss under Federal Rule of Civil Procedure 12(b)(6),[1] which the

[1] *Fed. R. Civ. P.* 12(b)(6), "Every defense to a claim for relief in any pleading must be asserted in the responsive pleading if one is required. But a party may assert the following defenses by motion: . . . (6) failure to state a claim upon which relief can be granted . . . .".

federal district court granted. Plaintiffs appealed to The United States Court of Appeals for the Tenth Circuit, which affirmed the dismissal of Plaintiffs' due process claim, but reversed the dismissal of the equal protection claim. Defendants then sought certiorari in the United States Supreme Court.

¶4 While certiorari was pending, the Supreme Court decided *United States v. Skrmetti*, 605 U.S. 495 (2025), holding that a Tennessee law banning certain medical care for transgender minors did not violate the Equal Protection Clause of the Fourteenth Amendment. *Id.* at 498-99. The Supreme Court then issued a Grant, Vacate, Remand Order ("GVR") directing the Tenth Circuit to undertake a review of its earlier decision in the present case considering the intervening precedent in *Skrmetti*. In light of *Skrmetti*, the Tenth Circuit ordered supplemental briefing from the parties.

¶5 In their supplemental briefing, Defendants argued that, irrespective of Executive Order 2021-24, no Oklahoma statute or regulation has ever permitted amendments to a sex designation on a birth certificate.[2] Defendants argued that 63 O.S. § 1-321(A)[3] limits birth certificate amendments to circumstances contained within statutes or regulations designed to protect the integrity and accuracy of birth certificates.[4] Furthermore, Defendants asserted that 63 O.S. § 1-321(H),[5] added

---

[2] Supp. Resp. for the State of Okla. at 12.
[3] "A certificate or record registered under this article may be amended only in accordance with this article and regulations thereunder adopted by the State Commissioner of Health to protect the integrity and accuracy of vital statistics records."
[4] Supp. Resp. for the State of Okla. at 12.
[5] The 2022 version of subsection(H) reads: "Beginning April 26, 2022, the biological sex designation on a certificate of birth amended under this section shall be either male or female and shall not be nonbinary or any symbol representing a nonbinary designation including but not limited to the letter 'X'."

to 63 O.S. § 1-321 in April 2022, made clear that Oklahoma birth certificates must contain a biological sex designation, and not a gender identity designation.[6] Conversely, Plaintiffs maintained that changes to sex designations on birth certificates, in the particular context of transgender persons, are permitted because such a change promotes the "integrity and accuracy of vital statistics records."[7] Plaintiffs conceded that, although 63 O.S.Supp.2022, § 1-321(H) bans non-binary designations on amended birth certificates, it does not prohibit Plaintiffs' desired amendments, i.e., a change from male to female or vice versa.[8]

¶6 We have never addressed whether changes to the sex designation on Oklahoma birth certificates are, or ever were, permitted under Oklahoma law. Although Plaintiffs challenged the constitutionality of Executive Order 2021-24, they did not challenge the constitutionality of 63 O.S. § 1-321. If Defendants' interpretation of 63 O.S. § 1-321 is correct, a successful challenge to the constitutionality of Executive Order 2021-24 would not redress Plaintiffs' alleged injuries. Plaintiffs, even if they prevail, would still be barred by 63 O.S. § 1-321 from amending their birth certificates as requested. This would result in the loss of redressability. Without redressability, Plaintiffs would lose standing. *See W. Watersheds Project v. Interior Bd. of Land Appeals*, 62 F.4th 1293, 1296 (10th Cir. 2023)( "[T]o establish standing, a plaintiff must show...(iii) that the injury would

---

[6] Supp. Resp. for the State of Okla. at 18-19.
[7] Pls.-Appellants' Reply Br. in Resp. to Feb. 3, 2026 Order at 5.
[8] *Id.* at 10.

likely be redressed by judicial relief.")(quoting *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2023)).

¶7 Since the Tenth Circuit certified the above-stated questions of law to this Court, 63 O.S. § 1-321(H) was amended in May 2026 by H.B. 1225. At Plaintiffs' request, we granted additional briefing concerning the amendment. We address both 63 O.S.Supp.2022, § 1-321(H) and 63 O.S.Supp.2026, § 1-321(H) when answering the certified questions.

¶8 In their additional briefing, Plaintiffs maintain that 63 O.S.2026, 1-321(H) allows "cisgender"[9] people to change the sex designation on their birth certificates while forbidding "transgender"[10] people from doing so.[11] Plaintiffs also argue that the 60th Legislature, in amending § 1-321(H) in 2026 with the passage of H.B. 1225, improperly declared the intent of the 58th Legislature,[12] as the 58th Legislature added subsection (H)[13] to § 1-321 with the passage of S.B. 1100 in 2022. Defendants argue that H.B. 1225 and its preamble merely clarifies S.B. 1100 and confirms that Oklahoma law has never allowed a person to change the sex listed on their birth certificate.[14]

---

[9] "of, relating to, or being a person whose gender identity corresponds with the sex the person was identified as having at birth," Merriam-Webster Dictionary, https://www.merriam-webster.com/dictionary/cisgender (last visited July 22, 2026).
[10] "of, relating to, or being a person whose gender identity differs from the sex the person was identified as having at birth," Merriam-Webster Dictionary, https://www.merriam-webster.com/dictionary/transgender (last visited July 22, 2026).
[11] Pl.-Appellants' Br. in Chief at 4-6.
[12] *Id.* at 6-10.
[13] "Beginning April 26, 2022, the biological sex designation on a certificate of birth amended under this section shall be either male or female and shall not be nonbinary or any symbol representing a nonbinary designation including but not limited to the letter 'X'."
[14] State's Supp. Br. at 6-7.

## REQUIREMENTS FOR ANSWERING CERTIFIED QUESTIONS

¶9 This Court is vested with discretionary authority to review questions of law certified to it by a court of the United States, so long as (1) the answer would be determinative of an issue in pending litigation in the certifying court; and (2) there is no established and controlling law on the subject matter. 20 O.S. § 1602; *Odom v. Penske Truck Leasing Co.*, 2018 OK 23, ¶ 7, 415 P.3d 521, 525. In reviewing certified questions, we are obligated to consider only those facts enumerated in the certification order, and our examination is confined to resolving legal issues. *Gov't. Emps. Ins. Co. v. Quine*, 2011 OK 88, ¶ 14, 264 P.3d 1245, 1249.

¶10 Answering all three certified questions would be dispositive of the issues pending, and there is presently no controlling law on the subject matter of all three certified questions.

## DISCUSSION

¶11 All three of the certified questions present issues of statutory interpretation. "The primary goal of statutory construction is to ascertain and follow the intention of the Legislature." *Brown v. Claims Mgmt. Res., Inc.*, 2017 OK 13, ¶ 20, 391 P.3d 111, 118 (quoting *Wylie v. Chesser*, 2007 OK 81, ¶ 19, 173 P.3d 64). Legislative intent is determined by looking at "the whole legislative act in light of its general purpose and object." *City of Tulsa v. State ex rel. Pub. Emps. Rels. Bd.*, 1998 OK 92, ¶ 14, 967 P.2d 1214, 1220 (citing *City of Bethany v. Pub. Emps. Relations Bd.*, 1995 OK 99, 904 P.2d 604, 609). "If a statute is plain and

unambiguous and its meaning clear, and no occasion exists for the application of rules of construction, a statute will be accorded the meaning expressed by the language used." *TRW/Reda Pump v. Brewington*, 1992 OK 31, ¶ 5, 829 P.2d 15, 20 (citing *Berry v. Pub. Emps. Ret. Sys.*, 1989 OK 14, 768 P.2d 898, 899-900). Legislative history is consulted when there is doubt as to the statute's meaning. *Lekan v. P & L Fire Prot. Co.*, 1980 OK 56, ¶ 6, 609 P.2d 1289, 1292. Where a statute is ambiguous or its meaning is unclear, it will be accorded a reasonable construction that avoids absurd consequences. *Brewington*, ¶ 5, 829 P.2d at 20.

**CERTIFIED QUESTION ONE**

> Whether Okla. Stat. tit. 63, § 1-321, as amended by Okla. Stat. tit. 63, § 1-321(H), prohibits changes to the sex designation on an Oklahoma birth certificate.

¶12 Section 1-321 is positioned under article 3 of Title 63, which concerns "Vital Statistics." Section 1-321 addresses amendments to a certificate or record. Subsection A of § 1-321 specifically states:

> "A certificate or record registered under this article may be amended **only in accordance with this article and regulations thereunder adopted by the State Commissioner of Health** to protect the integrity and accuracy of vital statistics records." (emphasis added).

¶13 This Court is guided by the canon *expressio unius est exclusio alterius*—"the expression of one thing is the exclusion of another thing." *See Morgan v. State Farm Mut. Auto. Ins. Co.*, 2021 OK 27, ¶ 28, 488 P.3d 743, 750-51 ("[T]he mention of one thing in a statute impliedly excludes another thing."). Thus, when a statute prescribes the mode of doing a particular thing, other modes

are excluded.[15] Moreover, we apply the canon *casus omissus pro omisso habendus est*—"a case omitted must be held as omitted." We presume that statutory omissions are intentional, and we do not "fill the gap." *See Broadway Clinic v. Liberty Mut. Ins. Co.*, 2006 OK 29, ¶ 16, 139 P.3d 873, 877 ("Where a word or phrase is absent from a statute, we must presume that its absence is intentional."); *State ex rel. Macy v. Bd. of Cnty. Comm'rs of Cnty. of Okla.*, 1999 OK 53, n. 13, 986 P.2d 1130, 1135 ("'*Casus omissus*' means that for the dispute in contest no statutory provision may be found.").

¶14 The language of § 1-321(A) is clear: amendments to birth certificates are limited to those explicitly listed under article 3 or the regulations promulgated by the State Commissioner of Health in Title 310:105-3-3 of the Oklahoma Administrative Code. The Legislature's use of "only in accordance with" conveys exclusion and limitation. *See Wykoff v. W. H. Wheeler & Co.*, 1913 OK 550, ¶ 10, 135 P. 399, 401 (quoting 2 Lewis' *Sutherland Statutory Construction* § 492, for the principle that when a statute prescribes the mode of doing a particular thing, other modes are excluded); *Bd. of Comm'rs of Grady Cnty. v. Hammerly*, 1921 OK 356, ¶ 33, 204 P. 445, 451 ("[W]here the manner of exercising a given power is prescribed, the method thus designated is exclusive."). Accordingly, an Oklahoma birth certificate may be amended only as authorized by the procedures set forth in 63 O.S. § 1-321 and Okla. Admin. Code § 310:105-3-3.

---

[15] *See Wykoff v. W. H. Wheeler & Co.*, 1913 OK 550, ¶ 10, 135 P. 399, 401, *infra* (quoting 2 Lewis' *Sutherland Statutory Construction* § 492).

¶15 Section 1-321 exclusively provides three circumstances in which a birth certificate may be amended: when a name change is needed (§1-321(C)); to demonstrate paternity of a child born out of wedlock if paternity is not already shown on the birth certificate (§ 1-321(D)); and to change the surname of a child born out of wedlock (§ 1-321(E)).

¶16 In April of 2022, § 1-321 was amended to include subsection (H). The 2022 version of § 1-321(H) provided:

> "Beginning April 26, 2022, the biological sex designation on a certificate of birth amended under this section shall be either male or female and shall not be nonbinary or any symbol representing a nonbinary designation including but not limited to the letter 'X.'"

¶17 Prior to this 2022 amendment, § 1-321 made no mention of a sex designation. The plain text of 63 O.S.2022, § 1-321(H) states that the sex designation on an amended birth certificate must read either male or female. But nowhere does § 1-321(H) permit changing a sex designation from male to female or vice versa.

¶18 In May of 2026, § 1-321(H) was amended by H.B. 1225 to read:

> "Every certificate of birth amended under this section shall contain an accurate biological sex designation of either male or female, as identified at the time of birth. The biological sex designation shall not be amended to display gender identity, a nonbinary designation, or any symbol representing a nonbinary designation including, but not limited to, the letter 'X'."

¶19 Like the 2022 version, the 2026 version of § 1-321(H) expressly prohibits an amended birth certificate to include anything but a male or female sex designation, but adds 1) that the designation must be identified at the time of birth,

and 2) the sex designation may not be amended "to display gender identity, a nonbinary designation, or any symbol representing a nonbinary designation including, but not limited to, the letter 'X'."[16] Both the 2022 and 2026 versions of § 1-321(H) state what the sex designation on an amended birth certificate must read, but nowhere does either version permit a change.

¶20 Title 310:105-3-3 of the Oklahoma Administrative Code provides three additional circumstances in which a birth certificate may be amended: (1) the registrant's name may be added to the birth certificate within 12 months of birth if it was left off the certificate; (2) the correction of a name entered erroneously; and (3) other changes may be made to correct "an error or misstatement of fact as to any non-medical information supplied to the State Registrar by the parent(s), facility or attendant." Okla. Admin. Code § 310:105-3-3 (b), (c), (e). We read no provision in Okla. Admin. Code § 310:105-3-3 to allow changing the sex designation on a birth certificate.

¶21 Because § 1-321(A) restricts the scope of permissible changes to those outlined in 63 O.S. § 1-321 and Okla. Admin. Code § 310:105-3-3, and because neither 63 O.S. §1-321 nor Okla. Admin. Code § 310:105-3-3 provides for changing a sex designation, we hold that 63 O.S. § 1-321, as amended by § 1-321(H), prohibits changes to the sex designation on an Oklahoma birth certificate. Accordingly, we answer Certified Question One in the affirmative.

**CERTIFIED QUESTION TWO**

---

[16] 63 O.S.Supp.2026, § 1-321(H).

Whether Okla. Stat. tit. 63, § 1-321 has ever permitted changes to the sex designation on an Oklahoma birth certificate.

¶22 Both parties agree that around 2007, some individuals began obtaining state court orders directing OSDH to amend their birth certificates to match their gender identity.[17] This practice was largely non-adversarial and persisted with little notoriety until 2021 when OSDH entered into a settlement enabling an individual to obtain an amended birth certificate with a gender-neutral designation. It was this settlement that prompted the Governor's Executive Order.[18]

¶23 The Plaintiffs contend that because OSDH amended birth certificates "based on a multitude of orders issued by Oklahoma state courts"[19] for so long, the statute obviously did not forbid such changes. "A cardinal precept of statutory construction is that where a statute's language is plain and unambiguous, and the meaning clear and unmistakable, no justification exists for the use of interpretive devices to fabricate a different meaning." *Shellem v. Gruneweld*, 2023 OK 26, ¶ 20, 535 P.3d 1208, 1214 (quoting *Keating v. Edmondson*, 2001 OK 110, ¶ 15, 37 P.3d 882, 888). Additionally, "[a]dministrative construction of a statute will not override the plain statutory language." *Id.* This principle applies squarely here. No longstanding agency practice can alter the statute's plain text or effectively rewrite

[17] Pls.-Appellants' Br. in Chief at 1-2; Br. of Appellees at 7-8.
[18] *Id.*
[19] Pls.-Appellants' Br. in Chief at 2

what the Legislature enacted. Furthermore, "[w]hen an agency's 'powers are limited by the plain language of the statute,' then the agency's manner, or extent, of performance 'must remain within the bounds of the law,' and the agency has no discretion to act outside the agency's statutory powers." *State ex rel. Okla. State Dep't of Health v. Okla. Cnty. Crim. Just. Auth.*, 2025 OK 36, ¶ 55, 571 P.3d 114, 131 (quoting *Winters v. Governor's Special Comm.*, 1967 OK 249, ¶¶ 7-8, 441 P.2d 370, 374).

¶24 At no point in the statute's history were amendments to sex designations permitted. The "only in accordance with" language of 63 O.S. § 1-321(A) which restricts the scope of permissible changes to those outlined in 63 O.S. § 1-321 and Okla. Admin. Code § 310:105-3-3 was present at the statute's enactment in 1963.[20] This language has survived no fewer than seven amendments of § 1-321 in 1986,[21] 2006,[22] 2011,[23] 2019,[24] 2021,[25] as well as the 2022 and 2026 amendments discussed *supra*. Reenacted portions of an amended statute are deemed to have been law since their original enactment. *See World Pub. Co. v. White*, 2001 OK 48, ¶ 17, 32 P.3d 835, 844 ("If the Legislature amends a statutory provision, the portions of the original statute which are repeated are considered to have been the law from the time they were originally enacted.")

---

[20] 1963 Okla. Sess. Laws ch. 325, § 321, at 493.
[21] 1986 Okla. Sess. Laws ch. 82, § 3, at 147.
[22] 2006 Okla. Sess. Laws ch. 116, § 61 at 471.
[23] 2011 Okla. Sess. Laws ch. 105, § 12 at 320.
[24] 2019 Okla. Sess. Laws ch. 96, § 1 at 481.
[25] 2021 Okla. Sess. Laws ch. 83, § 3 at 320.

Considering this and our analysis of Certified Question One, we answer Certified Question Two in the negative.

## CERTIFIED QUESTION THREE

> Whether Okla. Stat. tit. 63, § 1-321 does now or has ever permitted changes to the sex designation on an Oklahoma birth certificate based on gender identity.

¶25 As discussed in our answer to Certified Question One, 63 O.S. § 1-321 provides three permissible amendments to birth certificates, and § 310:105-3-3 of the Oklahoma Administrative Code provides three additional permissible amendments. Neither 63 O.S. § 1-321 nor Okla. Admin. Code § 310:105-3-3 permits a birth certificate amendment based on gender identity. And, effective May 2026, § 1-321(H) expressly prohibits a birth certificate amendment based on gender identity. Accordingly, 63 O.S. § 1-321 *does not now* permit changes to the sex designation on a birth certificate based on gender identity.

¶26 Nor has 63 O.S. § 1-321 *ever permitted* changes to the sex designation on a birth certificate based on gender identity. The 2022 and 2026 versions of 63 O.S. § 1-321(H) were passed in response to Executive Order 2021-2024, which called upon the legislature to "clarify, to the extent necessary, that changes in sex or gender on a birth certificate or a designation of non-binary is contrary to Oklahoma Law." When a later law clarifies an earlier law, the later law applies retroactively. *See Polymer Fabricating,* 1998 OK 113, ¶ 15, 980 P.2d 109, 114 ("Where an earlier legislative enactment is unclear in some respect and a later enactment attempts to remove the ambiguity, the amendatory statute constitutes

a clarifying enactment that is to be given retrospective force"). Considering this and our answers in Certified Questions One and Two, we answer Certified Question Three in the negative.

## CONCLUSION

¶27 In answer to the first question of law certified to this Court by the Tenth Circuit, we find that 63 O.S. § 1-321, as amended by § 1-321(H), prohibits changes to the sex designation on an Oklahoma birth certificate. In answer to the second question, we find that 63 O.S. § 1-321 has never permitted changes to the sex designation on an Oklahoma birth certificate. In answer to the third question, we find that 63 O.S. § 1-321 does not now nor has ever permitted changes to the sex designation on an Oklahoma birth certificate based on gender identity.

## CERTIFIED QUESTIONS ANSWERED

**Rowe, C.J., Kuehn, V.C.J., Edmondson, Darby, Kane, and Jett, JJ., concur.**

**Winchester, Combs, J. (by separate writing), and Gurich, JJ., dissent.**

**2026 OK 68**

**IN THE SUPREME COURT OF THE STATE OF OKLAHOMA**

FILED
SUPREME COURT
STATE OF OKLAHOMA

SEP 29 2026

SELDEN JONES
CLERK

ROWAN FOWLER; ALLISTER HALL; and CARTER RAY,

Plaintiffs/Appellants,

v.

J. KEVIN STITT, in his official capacity as Governor of the State of Oklahoma; KEITH REED, in his official capacity as Commissioner of Health for the Oklahoma State Department of Health; and KELLY BAKER, in her official capacity as State Registrar of Vital Records,

Defendants/Appellees.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

AMERICAN CIVIL LIBERTIES UNION; AMERICAN CIVIL LIBERTIES UNION OF OKLAHOMA; GLBTQ ADVOCATES & DEFENDERS; STATE OF KANSAS; STATE OF ARKANSAS; STATE OF IOWA; STATE OF INDIANA; STATE OF GEORGIA; STATE OF LOUISIANA; STATE OF MISSISSIPPI; STATE OF MISSOURI; STATE OF MONTANA; STATE OF NEBRASKA; STATE OF NORTH DAKOTA; STATE OF SOUTH CAROLINA; STATE OF TENNESSEE; STATE OF TEXAS; STATE OF UTAH; STATE OF WEST VIRGINIA; and UNITED STATES OF AMERICA,

Amici Curiae.

No. 124,023

**FOR OFFICIAL PUBLICATION**

**COMBS, J., with whom WINCHESTER, J., joins, dissenting:**

¶ 1 I respectfully dissent. One year ago, in *Black Emergency Response Team v. Drummond*, 2025 OK 44, 571 P.3d 135, this Court declined to answer certified questions that asked us to do nothing more than read and construe the text of an Oklahoma statute in aid of a pending federal constitutional challenge. Here, the three questions the Tenth Circuit has certified call for precisely the same exercise. I would answer them the same way we answered the federal district judge in *Black Emergency Response Team*, 2025 OK 44, 571 P.3d 135: I would decline.

¶ 2 The Court's authority to answer certified questions is discretionary, not obligatory. The Revised Uniform Certification of Questions of Law Act, 20 O.S. 2026, §§ 1601—1611, provides that this Court "*may* answer a question of law certified to it by a court of the United States . . . if the answer may be determinative of an issue in pending litigation in the certifying court and there is no controlling decision" of this State. 20 O.S.2026, § 1602 (emphasis added). Even if the two statutory prerequisites are met, we retain discretion. The majority correctly recites the two § 1602 factors—dispositiveness and the absence of controlling law—but treats their satisfaction as the end of the inquiry. Meeting the two factors is only the beginning. The question is not merely whether we *may* answer, but whether we *should*. In *Black Emergency Response Team*, applying the same Act, we held that

we should not. *Black Emergency Response Team*, 2025 OK 44, ¶ 18, 571 P.3d at 141.

¶ 3 Certification of a question presupposes an ambiguity that a state answer could resolve, but the majority concludes there is none. The premise of certification is that "an interpretation of state statutory law can potentially eliminate the need to address a federal question," and "[i]nherent in this concept is the premise that there is some ambiguity in the state statute, which could lead a state court to interpret it in a way that avoids or modifies the ultimate constitutional issue." *Id.* ¶ 21, 571 P.3d at 141. Where the task "is one of reading and interpreting statutory language as written," and "is essentially unaided by state court decisions," the certifying federal court can and should perform it, for "[f]ederal courts bear a duty to decide questions of state law when necessary to render a judgment." *Id.* ¶ 23, 571 P.3d at 142. By its own account, the majority confronts no ambiguity at all. It finds that "[t]he language of § 1-321(A) is clear," Majority Op. ¶ 14, resolves question one through canons available to any court, and reasons that because the statute enumerates the permissible amendments and does not mention a sex-designation change, none is authorized. Majority Op. ¶¶ 14, 25. Whatever the merits of that reading, it is not one that required this Court's intervention. The Tenth Circuit is fully equipped to apply Oklahoma's ordinary tools of statutory construction, as it must when it interprets a state law "as the state's supreme court would, using that state's approach

to statutory interpretation." *Black Emergency Response Team v. Drummond*, No. 24-6139, 2026 WL 2654160, at *8 (10th Cir. Sept. 9, 2026).

¶ 4 The questions certified here can be answered by reading the statute the Legislature wrote. Faithful to the restraint this Court exercised in *Black Emergency Response Team*, 2025 OK 44, 571 P.3d 135, I would exercise our discretion under 20 O.S.2026, § 1602 to respectfully decline to answer the certified questions. Because the majority does otherwise, I respectfully dissent.