No. 23-5080

**UNITED STATES COURT OF APPEALS**
**FOR THE TENTH CIRCUIT**

ROWAN FOWLER; ALLISTER HALL; and CARTER RAY,

*Plaintiffs-Appellants*,

v.

KEVIN STITT, in his official capacity as Governor of the State of Oklahoma; KEITH REED, in his official capacity as Commissioner of Health for the Oklahoma State Department of Health; and KELLY BAKER, in her official capacity as State Registrar of Vital Records,

*Defendants-Appellees*.

On Appeal from the United States District Court
for the Northern District of Oklahoma
No. 4:22-cv-00115-JWB-MTS (Judge John W. Broomes)

# PLAINTIFFS-APPELLANTS' SUPPLEMENTAL BRIEF PURSUANT TO OCTOBER 6, 2026 ORDER


Peter C. Renn
LAMBDA LEGAL DEFENSE AND
EDUCATION FUND, INC.
800 S. Figueroa St., Ste. 1260
Los Angeles, CA 90017
(213) 382-7600

Sasha Buchert
LAMBDA LEGAL DEFENSE AND
EDUCATION FUND, INC.
815 16th Street, NW, Suite 4140
Washington, D.C. 20006
(202) 804-6245

Shelly L. Skeen
Nicholas J. Hite
LAMBDA LEGAL DEFENSE AND
EDUCATION FUND, INC.
3500 Oak Lawn Avenue, Suite 500
Dallas, TX 75219
(214) 219-8585

Karen Keith Wilkins
1515 S. Denver Ave.
Tulsa, OK 74119
(918) 599-8118

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ..... ii

RECENT DEVELOPMENTS ..... 1

ARGUMENT ..... 1

I. The Recent Enactment of H.B. 1225 Alone Warrants Remand. ..... 2

II. H.B. 1225 Evinces an Intent to Discriminate Against Transgender People. ..... 3

III. To the Extent this Court Deems Necessary, Plaintiffs Should Be Afforded the Opportunity to Amend Their Complaint on Remand ..... 7

CONCLUSION ..... 10

CERTIFICATE OF COMPLIANCE ..... 12

CERTIFICATE OF SERVICE ..... 13

CERTIFICATE OF DIGITAL SUBMISSION ..... 14

## TABLE OF AUTHORITIES

Page(s)

### Cases

*Dobbs v. Anthem Blue Cross & Blue Shield*,
475 F.3d 1176 (10th Cir. 2007) .......... 2-3

*Fowler v. Stitt*,
104 F.4th 770 (10th Cir. 2024) .......... 1, 6, 9

*Fowler v. Stitt*,
2026 OK 68, -- P.3d --, 2026 WL 2920124 (Okla. 2026) .......... 2, 3, 4, 6, 10

*Gore v. Lee*,
107 F.4th 548 (6th Cir. 2024) .......... 10

*Grimm v. Gloucester Cnty. Sch. Bd.*,
972 F.3d 586 (4th Cir. 2020) .......... 10

*Karnoski v. Trump*,
926 F.3d 1180 (9th Cir. 2019) .......... 10

*Pac. Shores Props., LLC v. City of Newport Beach*,
730 F.3d 1142 (9th Cir. 2013) .......... 6

*Pers. Adm'r of Massachusetts v. Feeney*,
442 U.S. 256 (1979) .......... 4

*Petrini v. Howard*,
918 F.2d 1482 (10th Cir. 1990) .......... 3

*Polymer Fabricating, Inc. v. Emps. Workers' Comp. Ass'n*,
1998 OK 113, 980 P.2d 109 .......... 2

*Quintana v. Santa Fe Cnty. Bd. of Commissioners*,
973 F.3d 1022 (10th Cir. 2020) .......... 8

*Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*,
429 U.S. 252 (1977) .......... 5

*West Virginia v. B.P.J.*,
609 U.S. __, 146 S. Ct. 2356 (2026) .......... 9-10

## Statutes

63 Okla. Stat. § 1-321 .......... 1-2, 3

## Legislation

H.J.R. 1032, 60th Leg., 2d Reg. Sess. (Okla. 2026) .......... 4-5

House Bill 1225 .......... 1, 2, 3, 4, 5, 6, 7, 8, 9, 10

Senate Bill 1100 .......... 2, 4, 5, 6, 7, 9 10

## Rules

Fed. R. Civ. P. 15 .......... 8

## Other Authorities

Oklahoma House of Representatives, House Floor Session, S.B. 1100 (Apr. 21, 2022) .......... 5-6

Oklahoma's recent enactment of a new statute, House Bill 1225 (H.B. 1225), has now clarified that the State of Oklahoma intentionally bars transgender people like Plaintiffs from obtaining amended birth certificates consistent with their gender identity. That statute was enacted on May 7, 2026, after this Court issued its order certifying questions of state law to the Oklahoma Supreme Court, which confirmed the existence of the statutory ban. Oklahoma's enactment of H.B. 1225 to expressly prohibit amendments based on "gender identity" makes clear that transgender people are the intended target of Oklahoma law. While that statutory ban plausibly fails any level of constitutional scrutiny because it too "is not rationally related to Defendants' asserted interest in the accuracy of vital statistics," *Fowler v. Stitt*, 104 F.4th 770 (10th Cir. 2024), to the extent that this Court believes that additional allegations are appropriate to place the statutory ban—as informed by recent legislative enactments—more squarely at issue in this case, this Court should, at a minimum, vacate the district court's dismissal and remand to permit Plaintiffs to amend the complaint in light of intervening developments.

**RECENT DEVELOPMENTS**

On May 7, 2026, Oklahoma enacted H.B. 1225. The law amends Oklahoma's birth certificate amendment statute in relevant part to expressly ban amendments based on "gender identity" as reflected below:

> ~~Beginning on April 26, 2022, the biological sex designation on a~~ Every certificate of birth amended under this section shall ~~be~~ contain an accurate biological sex designation of either male or female ~~and shall not be~~, as identified at the time of birth. The biological sex designation shall not be amended to display gender identity, a nonbinary designation, or any symbol representing a nonbinary designation including, but not limited to, the letter "X".

63 Okla. Stat. § 1-321(H). H.B. 1225 also states that the 2022 enactment of Senate Bill 1100 (S.B. 1100) "was intended to clarify, in response to revelations about an unsanctioned settlement over a nonbinary designation, that Oklahoma birth certificates are supposed to contain a biological sex designation only, and that this designation should not be altered to display gender identity, a nonbinary designation, or anything other than a male or female designation." H.B. 1225, § 1 (Dkt. 143).

Both H.B. 1225 and S.B. 1100 are now directly relevant in this case, in light of the Oklahoma Supreme Court's answers to this Court's certified questions. The Oklahoma Supreme Court has held that both statutes were enacted to clarify Oklahoma law and have retroactive effect. It explained: "'Where an earlier legislative enactment is unclear in some respect and a later enactment attempts to remove the ambiguity, the amendatory statute constitutes a clarifying enactment that is to be given retrospective force.'" *Fowler v. Stitt*, -- P.3d --, 2026 WL 2920124, at *6 (Okla. 2026) (quoting *Polymer Fabricating, Inc. v. Emps. Workers' Comp. Ass'n*, 1998 OK 113, ¶ 15, 980 P.2d 109, 114).

## ARGUMENT

### I. The Recent Enactment of H.B. 1225 Alone Warrants Remand.

The recent enactment of H.B. 1225 during the pendency of this appeal represents a significant intervening development that alone warrants remand. The Oklahoma Supreme Court has also now held that H.B. 1225 constitutes clarifying legislation with retroactive effect. This Court has recognized that the enactment of legislation during the pendency of an appeal is an intervening development that can warrant remand. For example, in *Dobbs v. Anthem Blue Cross & Blue Shield*, 475 F.3d 1176 (10th Cir. 2007),

the district court had granted a motion to dismiss a case involving a health insurance policy provided by a tribal government, which Defendant had argued was preempted by ERISA, and during the pendency of the appeal, Congress passed legislation "to clarify the legal ambiguity" regarding the status of employee benefit plans established by tribal governments, *id.* at 1178. This Court therefore vacated the dismissal order and remanded for further proceedings in light of the intervening legislation. Similarly, in *Petrini v. Howard*, 918 F.2d 1482 (10th Cir. 1990), this Court remanded for further proceedings after Congress passed federal tort legislation during the pendency of the appeal that retroactively redefined the limits of employer immunity. Here, as well, the intervening enactment of H.B. 1225 represents a material development that warrants remand.

## II. H.B. 1225 Evinces an Intent to Discriminate Against Transgender People.

The enactment of H.B. 1225 also provides clarity that transgender people are the intended target of the law. That intent to discriminate is facially apparent, as H.B. 1225 now clarifies that it was always the intent of the legislature to prohibit amendments based on "gender identity." 63 Okla. Stat. § 1-321(H). The Oklahoma Supreme Court has also confirmed that the Oklahoma statute "expressly prohibits a birth certificate amendment based on gender identity." *Fowler*, 2026 WL 2920124, at *6. By definition, transgender people are those whose gender identity does not match their sex assigned at birth.

While the face of the statute is sufficient to establish the existence of intentional discrimination based on transgender status, the context surrounding H.B. 1225 reinforces the point. This Court previously found purposeful discrimination based on "[1] the Policy's disparate impact on transgender persons, [2] the events leading up to the

issuance of the Executive Order, including Governor Stitt's public statements, and [3] Defendants' inability to justify the Policy as advancing a legitimate state interest." Dkt. 140-1 at 3-4. The first and last point remain valid; and now the events leading up to H.B. 1225 play the same role as the (overlapping) events that led to the Executive Order.

As an initial matter, Section 1 of H.B. 1225 states that it was enacted to foreclose arguments made by "private parties" in litigation—that is, the transgender Plaintiffs here—that they were able to amend their certificates under Oklahoma statutes. H.B. 1225, § 1. Moreover, the Oklahoma Supreme Court's definitive ruling on H.B. 1225 and S.B. 1100 has now given renewed relevance to Governor Stitt's statements and actions. The Oklahoma Supreme Court held that both S.B. 1100 and H.B. 1225 were "passed *in response to* Executive Order 2021-24," which had called upon the Oklahoma Legislature to take action. *Fowler*, 2026 WL 2920124, at *6 (emphasis added). The Oklahoma Legislature answered Governor Stitt's call and embraced his intent. "'Discriminatory purpose[]' … implies that the decisionmaker, in this case a state legislature, selected *or reaffirmed* a particular course of action at least in part 'because of,' not merely 'in spite of,' its adverse effects upon an identifiable group." *Pers. Adm'r of Massachusetts v. Feeney*, 442 U.S. 256, 279 (1979) (emphasis added). And the Oklahoma Supreme Court has held that the legislature's intent runs retroactively because H.B. 1225 and S.B. 1100 merely clarified rather than changed Oklahoma law.[1]

[1] The same Oklahoma Legislature that enacted H.B. 1225 also stripped transgender people of their ability to obtain driver's licenses consistent with their gender identity.

The Oklahoma Supreme Court's holding on H.B. 1225 also breathes new relevance into S.B. 1100, which similarly evinces intentional discrimination against transgender people. In enacting H.B. 1225 in 2026, the Oklahoma Legislature declared that its intent in enacting S.B. 1100 in 2022 was to clarify that birth certificates "should not be altered to display gender identity," H.B. 1225, § 1, and the Oklahoma Supreme Court credited that H.B. 1225 constitutes clarifying legislation. Thus, the legislative history of S.B. 1100 is itself now a relevant source from which intentional discrimination can be established. *Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 268 (1977) (holding that "legislative . . . history may be highly relevant, especially where there are contemporary statements by members of the decisionmaking body"). The following exchange with the principal House author of S.B. 1100, Representative Dills, is illustrative:

> Rep. Williams: God created man in his own image. To the image of God, He created him, male and female. He created them. Most of us in here, I think, believe in God. God defined us. He created us. Isn't that what you're trying to do, is just emphasize that that's where we are?
>
> We can claim anything we want to be. I've claimed some things in the past that probably weren't very true either. . . .
>
> Rep. Dills: I absolutely believe that what you just stated is the foundation of our beliefs.

S.B. 1100, House Floor Session, April 21, 2022, at 9:56:14-

---

H.J.R. 1032 (2026) (repealing administrative rules permitting changes to sex designations on driver's licenses); *see also* Dkt. 139 at 12-13 (rebutting uniformity justification).

9:56:54.[2] This was not an isolated sentiment of disapproval. Another legislator stated that "if we do not document who you are and your biological sex, we've lost control of of [sic] who you are, and bad things can happen, is that correct?" to which Representative Dills responded, "Yes sir." S.B. 1100, House Floor Session, April 21, 2022, at 9:58:36-9:58:51 (emphasis added).[3]

The fact that the Oklahoma Supreme Court has construed Oklahoma statutes as "prohibit[ing] changes to the sex designation on an Oklahoma birth certificate" for anyone does not negate the existence of discriminatory intent against transgender people. *Fowler*, 2026 WL 2920124, at *5. Indeed, that was already the premise of this Court's original opinion: that "all Oklahomans—regardless of their sex or gender identity" were prohibited from amending the sex designation on their birth certificates. *Fowler*, 104 F.4th at 785. Yet this Court nevertheless recognized that there were facts from which discriminatory purpose can be reasonably inferred. *Id.*; *see also Pac. Shores Props., LLC v. City of Newport Beach*, 730 F.3d 1142, 1159 (9th Cir. 2013) ("A willingness to inflict collateral damage by harming some, or even all, individuals from a favored group in order to successfully harm members of a disfavored class does not cleanse the taint of discrimination; it simply underscores the depth of the defendant's animus"). That

---

[2] https://sg001-harmony.sliq.net/00283/harmony/en/PowerBrowser/PowerBrowserV3/20220421/1/43093?startposition=20220421095614&mediaEndTime=20220421095654&viewMode=2.

[3] https://sg001-harmony.sliq.net/00283/harmony/en/PowerBrowser/PowerBrowserV3/20220421/1/43093?startposition=20220421095836&mediaEndTime=20220421095851&viewMode=2

remains true now, even setting aside H.B. 1225's facial discrimination, given the sequence of events leading to its enactment, including Governor Stitt's Executive Order and public statements targeting transgender people, and the legislative history of both H.B. 1225 and S.B. 1100.

## III. To the Extent this Court Deems Necessary, Plaintiffs Should Be Afforded the Opportunity to Amend Their Complaint on Remand.

The key developments from which intentional discrimination can be plausibly inferred—including the enactment of H.B. 1225, its origins in Governor Stitt's Executive Order as confirmed by the Oklahoma Supreme Court, and its express targeting of "gender identity"—are already before this Court. However, to the extent that this Court deems amendment is necessary or appropriate to place Oklahoma's statutory ban—as clarified by the recent enactment of H.B. 1225—more squarely at issue in this litigation, this Court should, at a minimum, remand to permit Plaintiffs to amend their complaint.

Plaintiffs acknowledge that this Court has previously indicated that Plaintiffs' challenge to the Executive Order would not redress their injuries if Oklahoma statutes prohibited changes to the sex designations on their birth certificates. Dkt. 140-1 at 6. But that is not the end of the story. Plaintiffs also pled in their complaint that:

> "To the extent that Defendants nonetheless regard SB1100 as a bar to [Plaintiffs' requested] corrections, it falls within the scope of the challenged Birth Certificate Policy." Dkt. 16 at A.23.

> "Regardless of any Oklahoma statute or regulation, and how any state court interprets Oklahoma law, the federal constitution independently secures the right of transgender people to correct their birth certificates to match their gender identity." *Id.* at A.25.

> "The Birth Certificate Policy is maintained and motivated by animus toward

> transgender people, including to the extent that it rests upon any actual or asserted statutory barriers to providing transgender people with birth certificates matching their gender identity." *Id.* at A.25.

They have also pressed those same statutory points in this appeal. *See, e.g.*, Dkt. 137 at 4-5. For their part, Defendants similarly understood that Oklahoma statutes were at issue in this litigation to the extent they barred the amendments at issue. Dkt. 148 ("Plaintiffs have told this Court their complaint already reaches any statutory barrier").[4]

To be sure, the complaint did not allege facts regarding H.B. 1225—but that bill only became part of Oklahoma law on May 7, 2026. And while H.B. 1225 clarifies, rather than changes, Oklahoma law, the point remains: Plaintiffs cannot be faulted for not pleading allegations regarding Oklahoma statutes *as clarified by* H.B. 1225.

To the extent that this Court believes that further allegations specific to H.B. 1225 are necessary or appropriate, this Court can remand in order to permit amendment of the complaint. Leave to amend "should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2); *see also Quintana v. Santa Fe Cnty. Bd. of Commissioners*, 973 F.3d 1022, 1034 (10th Cir. 2020) (vacating district court's denial of leave to amend and remanding for further proceedings). Nor would leave to amend be futile here, and this Court's analysis on that front would provide the district court with guidance on remand. For all the reasons explained above, Oklahoma's statutes, as retroactively clarified by

---

[4] The district court did not believe that Plaintiffs had a duty to challenge the statutes at all, holding that "it does not appear that Plaintiffs are *required* to challenge the statute," Dkt. 16 at A.51, and thus did not have any occasion to determine whether leave to amend on that issue was necessary or appropriate.

H.B. 1225 and S.B. 1100, are plausibly motivated by an intent to discriminate against transgender people. That discrimination triggers heightened scrutiny, whether as a quasi-suspect classification or as a form of sex discrimination, but it also fails even rational basis review. As this Court previously recognized, "[t]here is no rational connection here." *Fowler*, 104 F.4th at 797. That connection is severed, at the very least, by the availability of original birth certificates, which continue to provide a record of assigned sex. *See id.* at 795 ("the same statistics are available, regardless of whether the Policy exists"). Across the many years that this litigation has now spanned, Defendants have never been able to solve that fatal, fundamental flaw in their gratuitous denial of the relief requested by Plaintiffs.

The sports decision in *West Virginia v. B.P.J.*, 609 U.S. __, 146 S. Ct. 2356 (2026), also not make amendment futile. The Supreme Court repeatedly cabined its analysis to the "distinctive sports context." *Id*. at 2377; *id.* at 2376 ("the sports context is again crucial"); *id.* ("[s]ports are different"); *id.* at 2378 ("[e]specially in the sports context"); *id.* ("[p]articularly in the sports context"); *id.* ("[i]n the sports context"); *id.* at 2381 (emphasizing "the nature and reality of sports"). For example, *B.P.J.* held that the government had justified its sports laws based on an interest in competitive fairness, because "[s]ports are highly competitive and generally zero sum." *Id.* There are no analogous considerations for birth certificate amendments. Likewise, *B.P.J.* rejected an as-applied equal protection challenge in the sports context based on a concern that such an analysis in the sports context would open "a backdoor argument for strict scrutiny" and requests for individualized exemptions based on each person's height, weight, and

other personal characteristics. *Id.* at 2378. Furthermore, and in any event, *B.P.J.* applied heightened scrutiny and re-affirmed that "laws that classify by sex are subject to . . . intermediate scrutiny," 146 S. Ct. at 2374, which undercuts Defendants' reliance on authorities applying rational basis review. *See, e.g.*, *Gore v. Lee*, 107 F.4th 548 (6th Cir. 2024). Because *B.P.J.* did not separately decide whether discrimination based on transgender status warrants heightened scrutiny, 146 S. Ct. at 2379, it left untouched other circuit precedent holding that heightened scrutiny applies to such discrimination. *Karnoski v. Trump*, 926 F.3d 1180, 1200 (9th Cir. 2019); *Grimm v. Gloucester Cnty. Sch. Bd.*, 972 F.3d 586, 610-13 (4th Cir. 2020).

Finally, remand would be more appropriate and efficient than forcing Plaintiffs to file a new action challenging H.B. 1225, which grows out of the same dispute that prompted the filing of the existing action. The Oklahoma Supreme Court has held that H.B. 1225 and S.B. 1100 were "passed in response to" the Executive Order. *Fowler*, 2026 WL 2920124, at *6. And H.B. 1225 expressly sought to foreclose arguments made by the "private parties" in this very case. H.B. 1225, § 1.

## CONCLUSION

For the foregoing reasons, this Court should reverse or, at a minimum, vacate the district court's dismissal and remand in light of the enactment of H.B. 1225.

Dated: October 20, 2026

Respectfully submitted,

/s/ Peter C. Renn

Peter C. Renn
LAMBDA LEGAL DEFENSE AND

Sasha Buchert
LAMBDA LEGAL DEFENSE AND

EDUCATION FUND, INC.
815 16th Street, NW, Suite 4140
Washington, D.C. 20002
(202) 804-6245

Shelly L. Skeen
Nicholas J. Hite
LAMBDA LEGAL DEFENSE AND
EDUCATION FUND, INC.
3500 Oak Lawn Avenue, Suite 500
Dallas, TX 75219
(214) 219-8585

EDUCATION FUND, INC.
800 S. Figueroa St., Ste. 1260
Los Angeles, CA 90017
(213) 382-7600

Karen Keith Wilkins
1515 S. Denver Ave.
Tulsa, OK 74119
(918) 599-8118

## CERTIFICATE OF COMPLIANCE

This brief complies with the Court's October 6, 2026 Order, because it is no longer than 10 pages.

This brief also complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5)-(6) and 10th Cir. R. 32 because it was prepared using Word for Microsoft 365 in Times New Roman 13-point font, a proportionally spaced typeface.

/s/ Peter C. Renn
Counsel for Plaintiffs-Appellants

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Tenth Circuit by using the appellate CM/ECF system on October 20, 2026. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

/s/ Peter C. Renn
Counsel for Plaintiffs-Appellants

**CERTIFICATE OF DIGITAL SUBMISSION**

I hereby certify that (1) all required privacy redactions have been made; (2) no paper copies of this document are required per the Court's October 6, 2026 Order; and (3) the electronic submission was scanned this document for viruses using Microsoft Defender and, according to that program, this document is virus free.

/s/ Peter C. Renn
Counsel for Plaintiffs-Appellants