No. 23-5080

---

## United States Court of Appeals
## For the Tenth Circuit

---

ROWAN FOWLER; ALLISTER HALL; and CARTER RAY,

*Plaintiffs-Appellants*,

v.

KEVIN STITT, in his official capacity as Governor of the State of Oklahoma;
KEITH REED, in his official capacity as Commissioner of Health for the
Oklahoma State Department of Health; and KELLY BAKER, in her official
capacity as State Registrar of Vital Records,

*Defendants-Appellees*.

---

On Appeal from the United States District Court
for the Northern District of Oklahoma
No. 4:22-cv-00115 (Judge John W. Broomes)

---

## BRIEF OF GLBTQ LEGAL ADVOCATES & DEFENDERS
## AS AMICUS CURIAE
## IN SUPPORT OF PLAINTIFFS-APPELLANTS SEEKING REVERSAL

---

Kimberly A. Havlin
Ariell D. Branson
WHITE & CASE LLP
1221 Avenue of the Americas
New York, NY 10020
(212) 819-8200
kim.havlin@whitecase.com

Patience Crozier
GLBTQ LEGAL ADVOCATES &
DEFENDERS
18 Tremont Street, Suite 950
Boston, MA 02108
(617) 426-1350
pcrozier@glad.org

*Counsel for Amicus Curiae*

# CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1 and Tenth Circuit Rule 26.1, the counsel for *Amicus Curiae* represent that the *Amicus Curiae* do not issue stock and do not have parent companies.

Counsel for the Amicus Curiae further certify that, to the best of their knowledge, no additional publicly traded company or corporation has an interest in the outcome of this case or appeal.

Respectfully submitted this October 5, 2023.


*/s/ Patience Crozier*
Patience Crozier
*Counsel for Amicus Curiae*

C-1

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT ...................................................................C-1

TABLE OF CONTENTS...........................................................................i

TABLE OF AUTHORITIES ...................................................................ii

IDENTITY AND INTEREST OF AMICUS CURIAE............................................1

SUMMARY OF ARGUMENT ................................................................2

ARGUMENT ....................................................................................3

I.     OKLAHOMA'S PROHIBITION IS CONTRARY TO SCIENTIFIC AND MEDICAL CONSENSUS ....................................................3

II.    OKLAHOMA'S BAN HARMS TRANSGENDER PEOPLE IN "AN ALMOST LIMITLESS NUMBER OF TRANSACTIONS AND ENDEAVORS THAT CONSTITUTE ORDINARY CIVIL LIFE IN A FREE SOCIETY."................................................................5

II.    THE VAST MAJORITY OF STATES, AS WELL AS THE FEDERAL GOVERNMENT, PERMIT TRANSGENDER INDIVIDUALS TO AMEND THEIR BIRTH CERTIFICATES .......................................10

CONCLUSION.................................................................................12

CERTIFICATE OF COMPLIANCE......................................................14

CERTIFICATE OF SERVICE .............................................................15

# TABLE OF AUTHORITIES

**Cases**

*Romer v. Evans*, 517 U.S. 620 (1996) ........................................................6

**Constitutional Provisions, Federal Statutes and Regulations**

8 FAM 403.3 ..............................................................................12

20 C.F.R. § 422.103 ......................................................................6

22 C.F.R. § 51.42 ........................................................................6

42 C.F.R. § 435.407 ......................................................................6

U.S. Const. art. 1, § 3, cl. 3 ..........................................................6

**State Statutes and Regulations**

Alas. Stat. § 18.50.220(c) ..............................................................11

Ala. Code § 22-9A-19(d) ................................................................11

Ariz. Rev. Stat. § 36-337(A)(3) ........................................................11

Ark. Code Ann. § 20-18-307(d) ..........................................................11

Cal. Health & Saf. Code § 103425 ......................................................11

Colo. Rev. Stat. § 1006-1 ..............................................................11

Conn. Gen. Stat. § 7-51 ................................................................11

Del. Code tit. 16 § 3131 ..............................................................11

D.C. Law 20-37 .................................................................................11

Fla. Stat. Ann. § 382.016 ..................................................................11

Ga. Code Ann. § 31-10-23(e) ...........................................................11

Haw. Rev. Stat. Ann. § 338-17.7(a)(4)(B).......................................11

Idaho Code § 39-245A(3) ................................................................11

410 Ill. Comp. Stat. Ann. 535/17 .....................................................11

Ind. Code Ann. § 16-37-2-10 ...........................................................11

Iowa Code § 144.23 ..........................................................................11

Ky. Rev. Stat. § 213.121(5) ..............................................................11

La. Rev. Stat. Ann. § 40:62 ..............................................................11

Mich. Comp. Laws Serv. § 333.2831(c)...........................................11

Me. Rev. Stat. tit. 22, § 2765 ...........................................................11

Md. Code Ann., Health–Gen. § 4-211 ..............................................11

Mass. Ann. Laws ch. 46, § 13(e) ......................................................11

Minn. Stat. Ann. § 144.218 ..............................................................11

Miss. Admin. Code 15-5-85:3.21.2 ...................................................11

Mo. Ann. Stat. § 193.215(9) .............................................................11

Neb. Rev. Stat. § 71-604.01 ..............................................................11

Nev. Admin. Code. Ch. 440, § 130..............................................................11

N.H. RSA 5-C:87 .......................................................................................11

N.J. Stat. Ann. § 26:8-40.12......................................................................12

N.M. SB 20 ................................................................................................11

NYCCRR tit. 10 § 35.2 ..............................................................................11

N.C. Gen. Stat. §§ 130A-118(b)(4),(e) .....................................................11

Okla. Stat. tit. 43, § 5 ................................................................................11

Okla. Stat. tit. § 6-105.3 ............................................................................11

Okla. Stat. tit. 40 § 77 ...............................................................................11

Or. HB 2673 ...............................................................................................11

R.I. Gen. Laws § 23-3-21 ..........................................................................11

S.C. Code. Ann. Regs. 44-63-100 .............................................................11

S.D. Admin. R. 44:09:05:02 ......................................................................11

T.X. Health & Safety Code § 192.011 .......................................................11

U.T. SB93 ..................................................................................................12

V.T. H.628 (Act 88) ...................................................................................12

V.A. SB 657 ...............................................................................................12

Wis. Stat. Ann. § 69.15 ..............................................................................12

W.Y. Rules and Regulations HLTH VR Ch. 10 s 4(e)(iii).......................................12

**Other Authorities**

Am. Bar Ass'n, *Birth Certificates*, (Nov. 20, 2018) https://perma.cc/K7BV-
W5QN ...............................................................................................................6

Am. Med. Ass'n House of Delegates, Resolution 223 (A-23), *Protecting
Access to Gender Affirming Care* (2023) ..............................................................4

Am. Med. Ass'n, *Conforming Sex and Gender Designation on Government
IDs and Other Documents H-65.967* (2019), https://policysearch.ama-
assn.org ..............................................................................................................5

Am. Psych. Ass'n, *Guidelines for Psychological Practice with Transgender
and Gender Nonconforming People*, 70 Am. Pysch. (2015)..................................3

Arjee Restar et al., *Legal Gender Marker and Name Change is Associated
with Lower Negative Emotional Response to Gender-Based Mistreatment
and Improve Mental Health Outcomes Among Trans Populations*, 11
SSM-Population Health (2020) .............................................................................5

Ayden I. Scheim, Amaya G. Perez-Brumer & Greta R. Bauer, *Gender-
Concordant Identity Documents and Mental Health Among Transgender
Adults in the USA: A Cross-Sectional Study*, 5 Lancet Pub. Health (2020)..........4

Brandon J. Hill et al., *Exploring Transgender Legal Name Change as a
Potential Structural Intervention for Mitigating Social Determinants of
Health Among Transgender Women of Color*, 15 Sexuality Rsch. & Soc.
Pol'y (2019) ......................................................................................................9

*Changing or Correcting a Birth Record*, https://perma.cc/6VLK-MR6V (last
visited Oct. 5, 2023)............................................................................................12

*To Change Sex/Gender on a Pennsylvania Certification of Birth*,
https://perma.cc/FS73-CVDY(last visited Oct. 5, 2023).......................................12

Greta R. Bauer et al., *Intervenable Factors Associated with Suicide Risk in Transgender Persons: A Respondent Driven Sampling Study in Ontario, Canada*, 15 BMC Pub. Health (2015) .................................................................5

Ilan H. Meyer et al., *Demographic Characteristics and Health Status of Transgender Adults in Select US Regions: Behavioral Risk Factor Surveillance System, 2014,* 107 Am. J. Pub. Health (2017) ..................................8

Interview with A. (Oct. 2, 2023) (Notes on file with counsel for *Amicus Curiae*) .................................................................................................10

Interview with B. (Oct. 1, 2023) (Notes on file with counsel for *Amicus Curiae*) .................................................................................................10

Interview with K. (Oct. 2, 2023) (Notes on file with counsel for *Amicus Curiae*) ...................................................................................................7

Interview with M. (Sept. 29, 2023) (Notes on file with counsel for *Amicus Curiae*) ...................................................................................................7

Jack Drescher & Ellen Haller, *Position Statement on Discrimination Against Transgender and Gender Diverse Individuals*, Am. Psych. Ass'n (July 2018) ...................................................................................................4

Jamie Langowski et al., *Transcending Prejudice: Gender Identity and Expression-Based Discrimination in the Metro Boston Rental Housing Market*, 29 Yale J. L. & Feminism (2018) ...........................................................9

Movement Amendment Project, *Identity Document Laws and Policies: Birth Certificates*, https://perma.cc/A4U7-MSBX (last visited Oct. 5, 2023)...............12

Nat'l Acads., Sci., Eng'g, & Med., *Understanding the Well-Being of LGBTQI+ Populations* (2020).........................................................................6, 9

Oklahoma Government, *What You Must Do to Keep Your SoonerCare Health Benefits*, https://perma.cc/W6D3-RUY6 (last visited Oct. 5, 2023) ..........7

Oklahoma Dep't of Health, *Parents of Students Enrolling in School Encourage to Order Birth Certificates Early*, https://perma.cc/E8ZR-PHY7 (last visited Oct. 5, 2023).............................................................7

*Request to Change Sex Designation on a Birth Certificate for an Adult*, https://perma.cc/RH6U-DZ4H (last visited Oct. 5, 2023)....................................12

Service Oklahoma, *REAL ID Checklist*, https://perma.cc/D8ZQ-7QHK (last visited Oct. 5, 2023)...............................................................................6

Sandy E. James et al., Nat'l Ctr. Transgender Equal., *The Report of the 2015 U.S. Transgender Survey* (2016).................................................. 8, 9, 10

Shanna K. Kattari et al., *Correlations Between Healthcare Provider Interactions and Mental Health Among Transgender and Nonbinary Adults*, 10 SSM–Population Health (2020) ...........................................................8

U.S. Dep't of State, *Birth of U.S. Citizens and Non-Citizen Nationals Abroad*, https://perma.cc/4RF6-XZSP (last visited Oct. 5, 2023)……………………..……12

World Pro. Ass'n Transgender Health, *Standards of Care for the Health of Transgender and Gender Diverse People* (8th ed., 2022)..................................3, 4

## IDENTITY AND INTEREST OF AMICUS CURIAE[1]

*Amicus curiae* GLBTQ Legal Advocates & Defenders ("GLAD") is a legal advocacy organization dedicated to securing legal equality for transgender people, LGBQ people, and people living with HIV on the bedrock promise that we all come before our government as equals.

---

[1] No party's counsel authored this brief in whole or in part. No party or party's counsel contributed money that was intended to fund preparing or submitting this brief. Only Amicus contributed money that was intended to fund preparing or submitting this brief. All parties have consented to the filing of this brief.

## SUMMARY OF ARGUMENT

*Amicus curiae* respectfully submits this brief in support of Appellants to present the following to the Court:

(i)     The unequivocal consensus among the medical and scientific community of the profound health harms inflicted on transgender people when they are forced to bear identification that does not match their gender identity, as well as the profound benefits to transgender people—a highly at-risk community already—of conforming birth certificates in the manner requested here;

(ii)    The myriad ways in which birth certificates are utilized in Oklahoma, and thus the ways that the State's refusal to amend birth certificates of transgender people undermines their economic and social stability by impeding their ability to engage in a wide range of basic acts of life; and

(iii)   That the overwhelming majority of states, as well as the federal government, enable transgender people to amend their birth certificates.

All of the foregoing substantiates and underscores that Oklahoma's prohibition on transgender people amending their birth certificates inflicts deep and lasting harm, in violation of their constitutional rights to equal protection (under any standard of review) and to privacy.

# ARGUMENT

## I.    OKLAHOMA'S PROHIBITION IS CONTRARY TO SCIENTIFIC AND MEDICAL CONSENSUS.

Gender identity is a well-established concept in medicine that refers to a person's internal sense of self as a particular gender.  *See* Am. Psych. Ass'n, *Guidelines for Psychological Practice with Transgender and Gender Nonconforming People*, 70 AM. PYSCH. 834 (2015).  For transgender people, their gender identity does not align with the sex they were assigned at birth.

For those prevented from living consistently with their gender identity, the incongruence can result in gender dysphoria, a serious medical condition characterized by a clinically significant and persistent discomfort or distress with a person's assigned sex at birth.[2]

Gender dysphoria is highly treatable, and with treatment transgender people can and do lead thriving, productive lives.  The consensus standards of care for that medical treatment are set forth in the internationally-recognized World Professional Association for Transgender Health ("WPATH") Standards of Care which have been endorsed by (among others) the American Medical Association, the American Psychological Association, the American Psychiatric Association, the World Health Organization; the American Academy of Family Physicians, the American Public

---

[2] World Pro. Ass'n Transgender Health, *Standards of Care for the Health of Transgender and Gender Diverse People* (8th ed., 2022).

3

Health Association, the Endocrine Society, and the American College of Obstetrics and Gynecology. In accordance with the WPATH Standards of Care, many transgender individuals with gender dysphoria undergo an individualized, medically indicated and supervised gender transition to address the symptoms of gender dysphoria and to live life consistently with their gender identity. A key component of that medical treatment includes steps to enable an individual to live, function in society, and be seen by others as the gender matching their gender identity.

What some call "legal transition" ensures that a person's identity documents, such as their birth certificate, reflect their accurate name and gender marker. *See* WPATH Standards of Care, *supra*, at 11; *see also* Ayden I. Scheim et al., *Gender-Concordant Identity Documents and Mental Health Among Transgender Adults in the USA: A Cross-Sectional Study*, 5 LANCET PUB. HEALTH 196, 197 (2020) ("Changing one's name and gender marker on IDs such as birth certificates, passports, and driver's licenses can be a crucial step"). Amendments to legal identification provides enormous positive benefits to transgender people that have been extensively recognized and documented by medical experts.[3] Thus the American Medical Association, the nation's largest association of physicians,

---

[3] *See, e.g.*, Am. Med. Ass'n House of Delegates Resolution 223 (A-23), *Protecting Access to Gender Affirming Care* (2023), *supra*; Jack Drescher & Ellen Haller, *Position Statement on Discrimination Against Transgender and Gender Diverse Individuals*, Am. Psych. Ass'n. (July 2018).

maintains that transgender people should be able to amend birth certificates.  *See* Am. Med. Ass'n, *Conforming Sex and Gender Designation on Government IDs and Other Documents H-65.967* (2019), https://perma.cc/2NKY-VALP.

Individuals who can update their IDs report lower rates of "depression, anxiety, somatization, psychiatric distress, and emotionally upsetting response due to gender-based mistreatment."  Arjee Restar et al., *Legal Gender Marker and Name Change is Associated with Lower Negative Emotional Response to Gender-Based Mistreatment and Improve Mental Health Outcomes Among Trans Populations*, 11 SSM-POPULATION HEALTH 6-7 (2020).  Studies have found that aligning identification with gender identity was associated with a 32% reduction in psychological distress and a 22-25% reduction in suicidal ideation.  *See, e.g.*, Scheim, *supra*; Greta R. Bauer et al., *Intervenable Factors Associated with Suicide Risk in Transgender Persons: A Respondent Driven Sampling Study in Ontario, Canada*, 15 BMC PUB. HEALTH 6 (2015) ("[H]aving one or more identity documents concordant with lived gender . . . [had] the potential to prevent 90 cases of ideation per 1,000 trans persons . . . and 230 [suicide] attempts per 1,000 with ideation.").

Oklahoma's prohibition on updating birth certificates is directly contrary to these widely-endorsed medical principles about how to best care for, and treat, these members of the community.

## II.    OKLAHOMA'S BAN HARMS TRANSGENDER PEOPLE IN "AN ALMOST LIMITLESS NUMBER OF TRANSACTIONS AND ENDEAVORS THAT CONSTITUTE ORDINARY CIVIL LIFE IN A FREE SOCIETY."[4]

People rely on birth certificates in a myriad of life-sustaining ways to function in society. *See* Nat'l Acads., Sci., Eng'g, & Med., *Understanding the Well-Being of LGBTQI+ Populations* 5- 11 (2020). A birth certificate is the first legal document an individual acquires and is foundational for accessing a wide range of federal rights and benefits. *See* Am. Bar Ass'n, *Birth Certificates* (Nov. 20, 2018), https://perma.cc/K7BV-W5QN. A birth certificate secures citizenship, which is necessary to vote and run for certain elected office. *See, e.g.*, U.S. Const. art. 1, § 3, cl. 3. A birth certificate is necessary to obtain a passport and a social security number. 22 C.F.R. § 51.42; 20 C.F.R. § 422.103. It is also needed to apply for key government health benefits such as Medicaid and Medicare, 42 C.F.R. § 435.407, and to obtain a REAL ID (for those who do not have a passport). *See* Service Oklahoma, *REAL ID Checklist*, https://perma.cc/D8ZQ-7QHK (last visited Oct. 5, 2023).

Birth certificates are likewise vital for accessing numerous services within the state of Oklahoma. Birth records are required to enroll in school, obtain identification cards for incarcerated individuals, obtain employment under the age

---

[4] *Romer v. Evans*, 517 U.S. 620, 631 (1996).

of 16, and to access state benefits such as SNAP and childcare subsidies.[5]  Birth certificates can also be necessary at key life transitions governed by state law, such as an individual or family member's death, or the birth or adoption of a child.

This has been the experience of K., a transgender man and military veteran living in Oklahoma with his family.[6]  Following Governor Stitt's Executive Order, K. went to court to update his identity documents.  K. explained that the mismatch between his gender presentation and legal identification makes him fearful for the safety of himself and his family.  However, his request to update his driver's license and birth certificate was denied—and because his identity documents list his gender as female, K. is not listed as "father" on his child's birth certificate.  The result is a continual forced "outing" of K. as transgender, along with his family.

M. has experienced this as a Native American, transgender man born, raised, and living in Oklahoma.[7]  Without an updated birth certificate, M. cannot get a driver's license that complies with Real ID, and his employer will not update his gender or name on his employment records without these amended documents.  The

---

[5] Oklahoma Dep't of Health, *Parents of Students Enrolling in School Encouraged to Order Birth Certificates Early*, https://perma.cc/E8ZR-PHY7 (last visited Oct. 5, 2023); Okla. Stat. tit. 43, § 5; Okla. Stat. tit. § 6-105.3; Okla. Stat. tit. 40 § 77; Oklahoma Government, *What You Must Do to Keep Your SoonerCare Health Benefits*, https://perma.cc/W6D3-RUY6 (last visited Oct. 5, 2023).

[6] Interview with K. (Oct. 2, 2023) (Notes on file with counsel for *Amicus Curiae*).

[7] Interview with M. (Sept. 29, 2023) (Notes on file with counsel for *Amicus Curiae*).

result is that M. has been routinely "outed" as transgender because his work email and login systems reflect a different gender.

The stories of K. and M. are not outliers. Holding a birth certificate that does not match one's gender identity results in repeated forced disclosure of transgender status—in violation of basic privacy rights (*See* App. Br. 31)—as well as "mismatched" identification that can lead to questioning, suspicion, and ultimately denial of service and other barriers in many spheres of life:

**Health Care.** It is well-documented that transgender people encounter significant discrimination in health care settings, and that the experience and fear of denial and discrimination dissuades transgender people from seeking basic healthcare, and further undermining health and well-being. *See*, *e.g.*, Sandy E. James et al., Nat'l Ctr. Transgender Equal., *The Report of the 2015 U.S. Transgender Survey* 10 (2016) ("NCTE Survey"); Shanna K. Kattari et al., *Correlations Between Healthcare Provider Interactions and Mental Health Among Transgender and Nonbinary Adults*, 10 SSM–POPULATION HEALTH 4 (2020).

**Employment and Economic Security.** Identification—often multiple forms—is vital to accessing employment and, in turn, promoting economic stability for transgender individuals and their families. Transgender people have higher unemployment and poverty rates than the U.S. population as a whole, NCTE Survey, *supra*, at 141-42, 145, and face extensive discrimination in the workplace. *See* Ilan

H. Meyer et al., *Demographic Characteristics and Health Status of Transgender Adults in Select US Regions: Behavioral Risk Factor Surveillance System, 2014*, 107 AM. J. PUB. HEALTH 582 (2017).  One study showed that transgender women with conforming identification were more likely to be employed and to hold stable housing, and reported higher monthly incomes.  Brandon J. Hill et al., *Exploring Transgender Legal Name Change as a Potential Structural Intervention for Mitigating Social Determinants of Health Among Transgender Women of Color*, 15 SEXUALITY RSCH. & SOC. POL'Y 9, 9-8 (2019).

**Housing**.  Housing is another arena that routinely requires multiple forms of identification, and one in which discrimination (and indeed, homelessness) is an acute problem for the transgender community.  *See* Nat'l Acads., Sci., Eng'g, & Med., *supra*, at 10-15.  In one study, 61% of transgender people experienced discriminatory treatment when searching for housing.  Jamie Langowski et al., *Transcending Prejudice: Gender Identity and Expression-Based Discrimination in the Metro Boston Rental Housing Market*, 29 YALE J.L. & FEMINISM 322 (2018).  Another study found that 23% of respondents had experienced a form of housing discrimination in the past year.  NCTE Survey, *supra*, at 176.

**Daily life and services**.  Daily life requires many interactions verifying identity.  Denying transgender people amended identification to use in these daily interactions is not merely an inconvenience, but subjects them to discrimination,

harassment, and worse, allegations of criminal activity such as fraud. "As a result of showing an ID with a name or gender that did not match their gender presentation, 25% of people were verbally harassed, 16% were denied services or benefits, 9% were asked to leave a location or establishment, and 2% were assaulted or attacked." *See* NCTE Survey, *supra*, at 82.

B., a transgender woman living in Oklahoma, has proudly owned her own small business throughout her adult life.[8] Because of Oklahoma's policy, she is unable to obtain an accurate birth certificate, and this exacts a punishing toll: "I'm currently in legal limbo because of one document I'm chained to. I can't seem to escape it and it haunts my entire life, leaving me sleepless at night and affecting me mentally." B. has considered leaving the state and the successful business she has built due to the mental anguish she has experienced. By contrast, A., a transgender man living in Oklahoma, was born in North Carolina, so he had the ability (unlike those born in Oklahoma) to obtain an amended birth certificate matching his gender identity.[9] This let him obtain an Oklahoma REAL ID reflects his accurate gender. A. now reports that "he can walk into and apply to a new job without fears of outing himself" and has experienced a significant improvement in his quality of life overall.

## III.  THE VAST MAJORITY OF STATES, AS WELL AS THE FEDERAL GOVERNMENT, PERMIT TRANSGENDER INDIVIDUALS TO AMEND THEIR BIRTH CERTIFICATES

---

[8] Interview with B. (Oct. 1, 2023) (Notes on file with counsel for *Amicus Curiae*).
[9] Interview with A. (Oct. 2, 2023) (Notes on file with counsel for *Amicus Curiae*).

There are only three states in the U.S. that categorically ban transgender people from amending their birth certificates. *See* App. Br. 10. The overwhelming majority of states—as well as the District of Columbia and U.S. territories such as Puerto Rico, Guam, and Northern Mariana Island—permit individuals to amend gender on a birth certificate. *See* Alas. Stat. § 18.50.220(c); Ala. Code § 22-9A-19(d); Ariz. Rev. Stat. § 36-337(A)(3); Ark. Code Ann. § 20-18-307(d); Cal. Health & Saf. Code § 103425; Colo. Rev. Stat. § 1006-1; Conn. Gen. Stat. § 7-51; Del. Code tit. 16 § 3131; D.C. Law 20-37; Fla. Stat. Ann. § 382.016; Ga. Code Ann. § 31-10-23(e); Haw. Rev. Stat. Ann. § 338-17.7(a)(4)(B); Idaho Code § 39-245A(3); 410 Ill. Comp. Stat. Ann. 535/17; Ind. Code Ann. § 16-37-2-10; Iowa Code § 144.23; Ky. Rev. Stat. § 213.121(5); La. Rev. Stat. Ann. § 40:62; Mich. Comp. Laws Serv. § 333.2831(c); Me. Rev. Stat. tit. 22, § 2765; Md. Code Ann., Health–Gen. § 4-211; Mass. Ann. Laws ch. 46, § 13(e); Minn. Stat. Ann. § 144.218; Miss. Admin. Code 15-5-85:3.21.2; Mo. Ann. Stat. § 193.215(9); Neb. Rev. Stat. § 71-604.01; Nev. Admin. Code. Ch. 440, § 130; N.H. RSA 5-C:87; N.J. Stat. Ann. § 26:8-40.12; N.M. SB 20; NYCCRR tit. 10 § 35.2; N.C. Gen. Stat. §§ 130A-118(b)(4),(e); *Changing or Correcting a Birth Record*, https://perma.cc/6VLK-MR6V (last visited Oct. 5, 2023); *To Change Sex/Gender on a Pennsylvania Certification of Birth*, https://perma.cc/FS73-CVDY; Or. HB 2673; R.I. Gen. Laws § 23-3-21; S.C. Code. Ann. Regs. 44-63-100; S.D. Admin. R. 44:09:05:02; T.X. Health & Safety Code §

192.011; U.T. SB93; V.T. H.628 (Act 88); V.A. SB 657; *Request to Change Sex Designation on a Birth Certificate for an Adult*, https://perma.cc/RH6U-DZ4H (last visited Oct. 5, 2023); Wis. Stat. Ann. § 69.15; W.Y. Rules and Regulations HLTH VR Ch. 10 s 4(e)(iii).[10]

The U.S. government is in accord—for U.S. citizens born abroad, the federal government issues a "Consular Report of Birth of a U.S. Citizen Abroad," for which there is a clear and accessible process for updating gender.[11]  *See* 8 FAM 403.3-1.

## CONCLUSION

Medical and scientific consensus, lived experience, and state and federal governmental policies across the United States all show that the ability to amend their birth certificates is essential for transgender people to live safe, stable, and productive lives.  Oklahoma's ban subjects transgender Oklahomans to a litany of harms and violates their constitutional rights.

The judgment of the district court should be reversed.

---

[10] *See* Movement Amendment Project, *Identity Document Laws and Policies: Birth Certificates*, https://perma.cc/A4U7-MSBX (last visited Oct. 5, 2023).
[11] U.S. Dep't of State, *Birth of U.S. Citizens and Non-Citizen Nationals Abroad*, https://perma.cc/4RF6-XZSP (last visited Oct. 5, 2023).

Date:  October 5, 2023

Respectfully submitted,

*/s/ Patience Crozier*

Kimberly A. Havlin
Ariell D. Branson
WHITE & CASE LLP
1221 Avenue of the Americas
New York, NY  10020
(212) 819-8200
kim.havlin@whitecase.com

Patience Crozier
GLBTQ LEGAL ADVOCATES &
DEFENDERS
18 Tremont Street, Suite 950
Boston, MA  02108
(617) 426-1350
pcrozier@glad.org

*Counsel for Amicus Curiae*

## CERTIFICATE OF COMPLIANCE

Pursuant to Fed. R. App. P. 29(a)(5) and 32(g)(1), I certify as follows:

1.      This Brief complies with the type-volume limitation of Fed. R. App. P. 29(a)(5) and 32(a)(7)(B) because this brief contains 2,600 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f); and

2.      This Brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word for Office 365 in 14-point Times New Roman font.


Dated:  October 5, 2023                          By: /s/ *Patience Crozier*
                                                 *Counsel for Amicus Curiae*

**CERTIFICATE OF SERVICE**

I, Patience Crozier, certify that on this 5th day of October 2023, I caused to be electronically filed the foregoing document with the United States Court of Appeals for the Tenth Circuit using the Court's CM/ECF system.  I further certify that this document was served this day on all counsel of record electronically via CM/ECF.

I further certify that seven paper copies of the brief with green covers and backing will be dispatched for delivery via Federal Express to: The Byron White U.S. Courthouse, 1823 Stout Street, Denver, CO, 80257.

Dated: October 5, 2023                     By: */s/ Patience Crozier*
                                           *Counsel for Amicus Curiae*