No. 23-5080

UNITED STATES COURT OF APPEALS
FOR THE TENTH CIRCUIT

ROWAN FOWLER, *et al.*,

*Plaintiffs-Appellants*,

v.

KEVIN STITT, in his official capacity as Governor of the State of Oklahoma, *et al.*,

*Defendants-Appellees.*

On appeal from the United States District Court
for the Northern District of Oklahoma

The Hon. John W. Broomes

No. 4:22-cv-00115-JWB-MTS

**BRIEF FOR *AMICI CURIAE* KANSAS, ARKANSAS, IOWA, INDIANA, GEORGIA, LOUISIANA, MISSISSIPPI, MISSOURI, MONTANA, NEBRASKA, NORTH DAKOTA, SOUTH CAROLINA, TENNESSEE, TEXAS, UTAH, and WEST VIRGINIA SUPPORTING DEFENDANT-APPELLEES AND AFFIRMANCE**

KRIS KOBACH
*Attorney General*
ANTHONY POWELL
 *Solicitor General*
ERIN B. GAIDE
 *Assistant Attorney General*

OFFICE OF ATTORNEY
GENERAL
 STATE OF KANSAS
120 SW 10th Avenue, 2nd Floor
Topeka, Kansas 66612
Phone: (785) 296-2215
Anthony.Powell@ag.ks.gov
Erin.Gaide@ag.ks.gov
*Counsel for Amici*

# TABLE OF CONTENTS

**TABLE OF AUTHORITIES** ...................................................................... iii

**IDENTITY AND INTERST OF** *AMICI CURIAE* .................................. 1

**ARGUMENT** ........................................................................................... 2

**1.   Plaintiffs do not have a privacy interest in state records** ............... 3

**a.   The Tenth Circuit should not recognize a new informational privacy right** ............................................................................................... 3

**b.   Even if there is a privacy right in one's transgender status, there is no privacy interest in state records** .............................................. 6

**2.   State laws and policies concerning the creation, organization, and preservation of vital records are rationally related to legitimate state interests** 10

**CERTIFICATE OF COMPLIANCE** ...................................................... 16

**CERTIFICATE OF DIGITAL SUBMISSION** ...................................... 16

**CERTIFICATE OF SERVICE** ............................................................... 17

# TABLE OF AUTHORITIES

## Cases

*Aid for Women v. Foulston*, 441 F.3d 1101 (10th Cir. 2006) ................................. 9

*Anderson v. Blake*, 469 F.3d 910 (10th Cir. 2006) ............................................. 6, 7

*Arroyo Gonzalez v. Rossello Nevares*, 305 F. Supp. 3d 327 (D.P.R. 2018) .......................... 6

*Ball v. James*, 451 U.S. 355 (1981) ................................................... 11

*Barrett v. Virginia*, 689 F.2d 498 (4th Cir. 1982) .................................. 14

*Carmichael v. S. Coal & Coke Co.*, 301 U.S. 495 (1937) .................................... 13

*Citizens for Const. Integrity v. United States*, 57 F.4th 750 (10th Cir. 2023) ........................ 15

*Collins v. City of Harker Heights*, 503 U.S. 115 (1992) .............................................. 4

*Dennis v. Charnes*, 646 F. Supp. 158 (D. Colo. 1986) ........................................ 16

*Dias v. City & Cnty. of Denver*, 567 F.3d 1169 (10th Cir. 2009) ........................................ 12

*Dobbs v. Jackson Women's Health Organization*, 142 S. Ct. 2228 (2022) ........................ 2, 3, 5

*Donohue v. Hoey*, 109 F. App'x 340 (10th Cir. 2004) ............................................. 11

*Eastwood v. Dep't of Corrs.*, 846 F.2d 627 (10th Cir. 1988) ................................... 3, 6

*Flanagan v. Munger*, 890 F.2d 1557 (10th Cir. 1989) ........................................... 9

*Fowler v. Stitt*, No. 22-CV-115-JWB-SH, 2023 WL 4010694 (N.D. Okla. June 8, 2023)

.................................................................................................. 4, 15

*Gilbert v. Fox*, No. 16-CV-00354-GPG, 2016 WL 931287 (D. Colo. Mar. 11, 2016)... 14

*Hartin v. Dir. of Bureau of Recs. & Stat., Dep't of Health of City of New York*, 347 N.Y.S.2d 515 (Sup. Ct. 1973) ........................................................................................ 12

*Leiser v. Moore*, 903 F.3d 1137 (10th Cir. 2018) ................................................. 2

*Maehr v. United States Dep't of State*, 5 F.4th 1100 (10th Cir. 2021) ................... 13

*NASA v. Nelson*, 562 U.S. 134 (2011) ................................................................. 5

*Planned Parenthood of Se. Pennsylvania v. Casey*, 505 U.S. 833 (1992) ............... 5

*Powers v. Harris*, 379 F.3d 1208 (10th Cir. 2004) ............................................... 15

*Ray v. McCloud*, 507 F. Supp. 3d 925 (S.D. Ohio 2020) ...................................... 6

*Roe v. Wade*, 410 U.S. 113 (1973) ...................................................................... 5

*Stewart v. Oklahoma City*, 47 F.4th 1125 (10th Cir. 2022) ............................... 8, 9

*United States v. Baker*, 415 F.3d 1273 (11th Cir. 2005) ..................................... 14

*Vance v. Bradley*, 440 U.S. 93 (1979) ............................................................ 12, 16

*Washington v. Glucksberg*, 521 U.S. 702 (1997) ................................................. 4

*Williamson v. Lee Optical of Oklahoma Inc.*, 348 U.S. 483 (1955) ................... 13, 17

**Statutes**

Ga. Code Ann. § 31-10-2, *et seq.* ....................................................................... 14

Ind. Code Ann. § 16-37-1-1 ............................................................................... 14

Kan. Stat. Ann. § 65-2401, *et seq.* ..................................................................... 14

Kan. Stat. Ann. § 65-2416(a) (2018) ................................................................. 17

Miss. Code. Ann. § 41-57-1, *et seq.* ................................................................... 15

Mo. Rev. Stat. § 193.025 ............................................................................... 15

Mont. Admin. R. 37.8.311 ............................................................................. 1

S.B. 180, 2023 Leg. Sess. (Kan. 2023) ......................................................... 1

S.C. Code Ann. § 44-63-70 ........................................................................... 15

Tenn. Code Ann. § 68-3-202(a) ................................................................... 15

Tenn. Code Ann. § 68-3-203(d) .................................................................. 1

**Other Authorities**

Brief for Amici Curiae American Civil Liberties Union & American Civil Liberties
   Union of Oklahoma at vi & vi n.1 ........................................................... 7

Kansas Attorney General Opinion 2023-2 ............................................... 1

## IDENTITY AND INTERST OF *AMICI CURIAE*

The States of Kansas, Arkansas, Georgia, Iowa, Indiana, Louisiana, Mississippi, Missouri, Montana, Nebraska, North Dakota, South Carolina, Tennessee, Texas, Utah, and West Virginia maintain records of vital statistics and identification for their citizens and those born in the state.  In order to maintain uniform, complete, and accurate records, each state has passed laws and enacted policies controlling the creation, organization, and preservation of those records.  Each unique system was chosen by each state's legislature and executives for accuracy, efficiency, and as the best use of limited state resources.

In addition, Kansas and other Amici States have adopted laws and policies related to biological sex markers on vital records and identification documents.  *See, e.g.*, S.B. 180, 2023 Leg. Sess. (Kan. 2023); Kansas Attorney General Opinion 2023-2; Mont. Admin. R. 37.8.311; Tenn. Code Ann. § 68-3-203(d).  These laws and policies could be impacted by the outcome of this litigation, and the States have a strong interest in defending them.

Accordingly, Amici States file this brief in support of Defendant-Appellees under Federal Rule of Appellate Procedure 29(a)(2).

## ARGUMENT

This Court should affirm the district court's order dismissing Plaintiffs' claim that Oklahoma's common-sense, scientifically accurate policy regarding the sex designation on birth certificates (whereby biological males are listed as male and biological females are listed as female) somehow violates the federal Constitution. Plaintiffs' challenge to Oklahoma's policy of not allowing individuals to change the sex marker on their birth certificates—which Plaintiffs frame as a denial of their informational privacy rights—amounts to a challenge to Oklahoma's ability to create, organize, and preserve its records of vital statistics and identification in the way the State sees fit. Their arguments elevate modern theories about gender identity over the State's decision to recognize that there are two sexes that are determined at birth.

At any rate, the Tenth Circuit has never recognized the informational privacy right Plaintiffs assert,[1] and, following the Supreme Court's decision in *Dobbs v. Jackson Women's Health Organization*,[2] the Court should be exceptionally wary of doing so now. And even if the Court were to decide there is a privacy right in one's gender identity or transgender status, it should affirm the dismissal because there has never been an

---

[1] Indeed, it is not even clear that the Constitution protects a right to "informational privacy" at all. *Leiser v. Moore*, 903 F.3d 1137, 1141–44 (10th Cir. 2018) (reviewing Supreme Court caselaw on the topic and noting that previous Circuit caselaw recognizing such a right relied on a since-rejected misreading of Supreme Court cases).

[2] 142 S. Ct. 2228 (2022).

expectation that the information on one's birth certificate will remain confidential. (The purpose of a birth certificate is, after all, the recordation and disclosure of particular vital statistics.)  Finally, because Plaintiffs' challenge does not implicate any fundamental rights, the Court should apply rational basis review and uphold the dismissal because the policy advances several legitimate state interests.

**1.    Plaintiffs do not have a privacy interest in state records**

**a.    The Tenth Circuit should not recognize a new informational privacy right**

The Tenth Circuit has never recognized a constitutionally protected informational privacy right in one's transgender status or gender identity.  It should not do so now.

The Constitution does not expressly protect any right to privacy.  *Eastwood v. Dep't of Corr. of State of Okla.*, 846 F.2d 627, 630 (10th Cir. 1988).  When a right is not expressly protected, a person asserting it must demonstrate it is implicitly protected by another constitutional provision.  *C.f. Dobbs v. Jackson Women's Health Organization*, 142 S. Ct. 2228, 2242 (2022) ("The Constitution makes no reference to abortion, and no such right is implicitly protected by any constitutional provision, including the one on which the defenders of *Roe* and *Casey* now chiefly rely—the Due Process Clause of the Fourteenth Amendment.").

Neither the Supreme Court nor the Tenth Circuit has previously recognized an informational privacy right in transgender status or gender identity implicitly protected by the Due Process Clause.  This Court should be reluctant to expand constitutional

rights under the umbrella of substantive due process.  As the district court correctly observed, "[j]udicial caution is . . . imperative[,] and courts should 'exercise the utmost care whenever [they] are asked to break new ground in this field, lest the liberty protected by the Due Process Clause be subtly transformed into the policy preferences' of the judicial branch." *Fowler v. Stitt*, No. 22-CV-115-JWB-SH, 2023 WL 4010694, at *9 (N.D. Okla. June 8, 2023) (unpublished) (quoting *Washington v. Glucksberg*, 521 U.S. 702, 720 (1997)); *see also Collins v. City of Harker Heights*, 503 U.S. 115, 125 (1992) ("[T]he Court has always been reluctant to expand the concept of substantive due process because guideposts for responsible decisionmaking in this unchartered area are scarce and open-ended." (citation omitted)).[3]

Substantive Due Process rights are now, as they have always been, limited to those that are "'deeply rooted in this Nation's history and tradition' and 'implicit in the concept of ordered liberty.'" *Dobbs*, 142 S. Ct. at 2242 (quoting *Glucksberg*, 521 U.S. at 721).  But rather than attempt to locate the right to informational privacy over one's

---

[3] Courts should be even more wary when the right claimed is defined as a right to privacy.  The now-repudiated *Roe v. Wade*, for instance, categorized the right to an abortion, in part, as a privacy right.  *See* 410 U.S. 113, 153 (1973).  But *Roe*'s "unfocused analysis" that identified the right to an abortion as a right to privacy found "somewhere in the Constitution" without "specifying its exact location" was later abandoned by the Court in *Casey*.  *Dobbs*, 142 S. Ct. at 2245 (citing generally *Planned Parenthood of Se. Pennsylvania v. Casey*, 505 U.S. 833 (1992)).  Instead, the *Casey* Court "grounded its decision solely on the theory that the right to obtain an abortion is part of the 'liberty' interest protected by the Fourteenth Amendment's Due Process Clause." *Id.* Importantly, Plaintiffs have not raised a "liberty" theory in this appeal.

transgender status or gender identity somewhere in our Nation's history and tradition, the Plaintiffs attempt to extrapolate it from inapplicable caselaw. *See generally NASA v. Nelson*, 562 U.S. 134, 160 (2011) (Scalia, J., concurring) ("To tell the truth, I found this approach refreshingly honest. One who asks us to invent a constitutional right out of whole cloth should spare himself and us the pretense of tying it to some words of the Constitution."). True, this Court has recognized a right to informational privacy in some limited circumstances.[4] But the rights recognized in those cases are of a different quality than the claimed right at issue here. As discussed more below, *infra* Part 1(b), these cases involved the government collecting personal information from a specific individual and then disseminating it without a legitimate reason. The cases do not involve the routine collection and recording of biological or biographical information. They therefore do not support the contention that there is a longstanding right to privacy that prevents Oklahoma from collecting such basic information at the time of birth and adding that information to a birth certificate.

Furthermore, the few out-of-circuit cases that have claimed to find a constitutionally protected right to privacy in one's transgender status are unpersuasive. All such cases were decided before *Dobbs*, and did not discuss whether the right was deeply rooted in our history and tradition. *See, e.g., Ray v. McCloud*, 507 F. Supp. 3d

---

[4] *See, e.g., Anderson v. Blake*, 469 F.3d 910, 915 (10th Cir. 2006); *Sheets v. Salt Lake Cnty.*, 45 F.3d 1383, 1388 (10th Cir. 1995); *Eastwood v. Dep't of Corrs.*, 846 F.2d 627, 630 (10th Cir. 1988).

925, 936 (S.D. Ohio 2020); *Arroyo Gonzalez v. Rossello Nevares*, 305 F. Supp. 3d 327, 333 (D.P.R. 2018). They have little persuasive value, and Court should hesitate before relying on them.

The plain text of the Constitution does not grant a right to informational privacy in one's transgender status or gender identity. Neither the Supreme Court nor this Court has ever found such a right in the Fourteenth Amendment's Due Process Clause. And Plaintiffs have not shown that any such hypothetical right is deeply rooted in the Nation's history and tradition. Therefore, the Court should affirm the dismissal.

**b.    Even if there is a privacy right in one's transgender status, there is no privacy interest in state records**

Even if the Court were to recognize a general, constitutionally protected right to informational privacy in one's transgender status or gender identity, however, such recognition would not prohibit states from issuing birth certificates that include the holder's biological sex. That is because before a party can assert a constitutional right to prevent the state from disclosing information, he or she must show there is a "legitimate expectation" the information "will remain confidential while in the state's possession." *Anderson v. Blake*, 469 F.3d 910, 914 (10th Cir. 2006). And there is no such expectation in this case. There is neither a "legitimate expectation of privacy" in the fact of one's biological sex nor in the confidentiality of government records containing that information.

To begin with, Plaintiffs' argument that they have a right to informational privacy in their gender identity or transgender status confuses more than it clarifies, because Oklahoma *is not keeping a record of such identity or status*. Oklahoma and other states keep a record of a person's biological sex as recognized at birth. Insofar as biological sex reveals anything about gender identity or transgender status, it could do so only implicitly. And, even then, such revelation is heavily dependent on circumstances such as how the particular person presents themself at the time, the internalized sex stereotypes of the person who receives the information, etc.

Thus, understanding the proper frame of reference, it becomes plain that Plaintiffs are trying to prevent the state from disclosing information that is not commonly understood as "private." For a large majority of the population, biological sex is held out to the public, for all to see.[5] Biological sex therefore cannot be a constitutionally protected private fact. *Cf. Stewart v. Oklahoma City*, 47 F.4th 1125, 1137 (10th Cir. 2022) (information about couple's relationship, which is held out to the public, not constitutionally protected); *Flanagan v. Munger*, 890 F.2d 1557, 1570 (10th Cir. 1989) (fact that officers were reprimanded not constitutionally protected when conduct for which they were reprimanded was public).

---

[5] Even if the Court were to assume that every single transgender-identifying person in Oklahoma is trying to hide his or her biological sex, we are still talking about less than one percent of the overall population. ACLU Amicus Br. vi & n.1.

Furthermore, this Court has previously held that a person may not prevent the state from disclosing "basic biographical and background information" about a person on constitutional grounds. *Stewart*, 47 F.4th at 1137. Therefore, even if a person chooses not to disclose his or her biological sex to members of the public, and even if a person could prevent the government from disclosing information about his or her transgender status or gender identity if the government were aware of it, binding caselaw says that Plaintiffs cannot prevent Oklahoma from recording their biological sex on a government-issued birth certificate.

Also, there is no legitimate expectation that the information contained on a birth certificate will remain private or confidential. The purpose of a birth certificate, after all, is to record vital information at birth so that it may be shared later in the individual's life. Such a record therefore cannot be constitutionally protected from disclosure. *Compare Aid for Women v. Foulston*, 441 F.3d 1101, 1118 (10th Cir. 2006) (records about criminal activity not constitutionally protected),[6] *with A.L.A. v. West Valley City*, 26 F.3d 989, 990 (10th Cir. 1994) (confidential medical information, which is only shared among a small set of people, is protected), *and Sheets v. Salt Lake Cty.*, 45 F.3d 1383, 1388 (10th Cir. 1995) (information from a person's diary was intended to be shared only by police internally, and therefore plaintiff had a constitutional right

---

[6] Amici are not comparing a person's transgender status or gender identity to criminal activity. Rather, the Court should compare the government records in question, the purposes for which the records were created, and the expectation of privacy a person may have in those records.

against disclosure). States share information contained on a person's birth certificate among agencies and with the federal government for, for example, public health and statistical purposes. And individuals are expected to use their birth certificates to confirm their identities. That a person may prefer to keep his or her name, parentage, birthday, or biological sex private does not create any expectation that a government record containing that information will remain confidential.

Finally, there is no privacy interest in a conclusion that can be drawn from non-private information. For example, while the husband of a murder victim may have had a legitimate expectation of privacy in "intimate information," police did not violate his constitutional rights by disclosing the fact that he was seen with another woman the night his wife vanished. *Donohue v. Hoey*, 109 F. App'x 340, 365 (10th Cir. 2004). While a third party could have concluded he was having an affair, the fact he was seen with the other woman was not private because, as this Court explained, "anyone could have seen them walking publicly together." *Id.* Likewise, a person has no constitutionally protected privacy interest in the fact of his or her biological sex, which is often apparent to the public. That a third party might be able to conclude the person is transgender after seeing the gender marker on a government record does not create a legitimate expectation of privacy in the fact of the individual's biological sex or said record.

Therefore, even if Plaintiffs have a right to informational privacy in their transgender statuses or gender identities, Plaintiffs' demand that the Court stop the

9

government from disclosing different information is inapposite—there is no protected privacy interest in a government record that contains a person's biological sex.

2.    **State laws and policies concerning the creation, organization, and preservation of vital records are rationally related to legitimate state interests**

Given that Plaintiffs have no constitutionally protected privacy interest at stake, then, Oklahoma's policy need only have some rational basis. *See Ball v. James*, 451 U.S. 355, 371 (1981); *Vance v. Bradley*, 440 U.S. 93, 97 (1979). As long as it is something more than arbitrary government action, Plaintiffs have no grounds to complain and the district court was right to dismiss their case.

Courts have long applied rational basis review to states' policies related to the creation, organization, and preservation of their own records and vital statistics. *See, e.g., Hartin v. Dir. of Bureau of Recs. & Stat., Dep't of Health of City of New York*, 347 N.Y.S.2d 515, 517 (Sup. Ct. 1973) ("The essential question is whether the rule adopted by the Department [regarding changing the sex marker on a birth certificate] has a rational basis . . ."). And for good reason: as discussed, there is no fundamental right implicated in a state's creation and maintenance of its vital records. Therefore, this Court reviews such laws or policies to determine whether they "bear a rational relationship to a legitimate government interest." *Dias v. City & Cty. of Denver*, 567 F.3d 1169, 1182 (10th Cir. 2009).

In applying rational basis review, a court considers whether "there is any reasonably conceivable set of facts that could provide a rational basis" for the law or policy. *Maehr v. Dep't of State*, 5 F.4th 1100, 1122 (10th Cir. 2021), *cert. denied*, 142 S. Ct. 1123 (2022). If any rationale supports the law, the court must uphold it. The court cannot substitute its judgment for that of the state actor, and it must not strike down a law simply because it, other states, or members of the public do not like it. The Court has observed, "[t]he day is gone when th[e] Court uses the Due Process Clause of the Fourteenth Amendment to strike down state law . . . because [it] may be unwise, improvident, or out of harmony with a particular school of thought." *Williamson v. Lee Optical of Okla., Inc.*, 348 U.S. 483, 488 (1955). As long as the state had or could have had a rational reason for enacting the law, it "has the widest possible latitude within the limits of the Constitution." *Carmichael v. S. Coal & Coke Co.*, 301 U.S. 495, 510 (1937).

Amici States, and others, have an obvious interest in uniform, accurate, and complete vital records. *See, e.g.*, Kan. Stat. Ann. § 65-2401, *et seq.*; Okla. Stat. Ann. tit. 63, § 1-310(a); Ga. Code Ann. § 31-10-2, *et seq.*; Ind. Code Ann. § 16-37-1-1; Miss. Code. Ann. § 41-57-1, *et seq.*; Mo. Rev. Stat. § 193.025; S.C. Code Ann. § 44-63-70; Tenn. Code Ann. § 68-3-202(a). Each has developed its own, sometimes unique, policies to accomplish this goal in the manner it deems most efficient or the best use of its resources. As with other administrative matters, the Court should presume the States know best how to create, organize, and preserve their own records.

11

In fact, federal courts have frequently declined to interfere with state or agency recordkeeping when a person seeks to retroactively change his or her records. *See, e.g.*, *United States v. Baker*, 415 F.3d 1273, 1274 (11th Cir. 2005); *Barrett v. Virginia*, 689 F.2d 498, 503 (4th Cir. 1982); *Gilbert v. Fox*, No. 16-CV-00354-GPG, 2016 WL 931287, at *4 (D. Colo. Mar. 11, 2016) (unpublished). The Court should, therefore, find Oklahoma's policy for the creation, organization, and preservation of its birth certificates advances a legitimate state interest.

Even if the Court finds states' recordkeeping policies go beyond a purely administrative function, however, it should still dismiss the challenge. Rational basis is a highly deferential standard of review. "A party challenging a law under rational-basis review must 'negative *every conceivable* basis which might support it.'" *Citizens for Const. Integrity v. United States*, 57 F.4th 750, 767 (10th Cir. 2023) (emphasis added) (quoting *FCC v. Beach Commc'ns*, 508 U.S. 307, 315 (1993)), *cert. denied*, No. 22-1186, 2023 WL 6377936 (U.S. Oct. 2, 2023). Courts do not require state legislatures to articulate the specific interest they seek to advance and may consider any conceivable interest. *Powers v. Harris*, 379 F.3d 1208, 1215 (10th Cir. 2004). Courts are "obligated to consider every plausible legitimate state interest that might support" the policy, even if the reason is not advanced by the parties. *Id.* at 1218.

The district court identified two reasons states may have for creating and preserving complete, accurate, and uniform records of vital statistics: accuracy and determining whether a person is male or female for the purposes of women's sports

participation. *See Fowler*, 2023 WL 4010694, at *22. And states' systems of recordkeeping advance numerous other interests, too. For example, states rely on vital records, including birth certificates, to determine a person's eligibility for benefits. States have an interest in maintaining a complete, accurate, and uniform system to make those determinations and avoid fraud. This is particularly important in Kansas, where a birth certificate is "prima facie evidence of the facts therein stated." Kan. Stat. Ann. § 65-2416(a) (2018). The Tenth Circuit has also recognized that states have a "significant" interest in public safety. *See Evans v. Sandy City*, 944 F.3d 847, 856 (10th Cir. 2019). State policies related to identification and recordkeeping advance that interest. *See Dennis v. Charnes*, 646 F. Supp. 158, 162 (D. Colo. 1986). Finally, as above, states have a legitimate interest in how they expend and preserve their own resources. States have chosen systems for recordkeeping and identification that are efficient and the best use of taxpayer dollars. *See generally Vance*, 440 U.S. at 109 (court may consider the "secondary objective of legislative convenience"). Opening up the ability to alter birth certificates to change a sex marker plainly would require some expenditure of state resources; it is up to the state to determine whether such expenditures are worth it.

Finally, it is worth reiterating the Court's limited role in this matter. The Court has not been asked whether it likes or approves of any given state law or policy. It must only decide whether the state has a legitimate interest that could be advanced by the policy. Anything beyond that is a matter for the state legislature and the voters.

13

*Williamson*, 348 U.S. at 488 ("For protection against abuses by legislatures the people must resort to the polls, not to the courts." (internal quotes omitted)).

Oklahoma and other states have created systems of recordkeeping that each believes will best suit its purposes. States have a legitimate interest in maintaining those systems. The Court should therefore hold Oklahoma's policy is rationally related to a legitimate government interest and dismiss the complaint.

***

For these reasons, Amici States urge the Court to affirm the district court's dismissal of Plaintiff's complaint.

### *Additional State Signatories*

TIM GRIFFIN
Attorney General
*State of Arkansas*

MICHAEL T. HILGERS
Attorney General
*State of Nebraska*

CHRISTOPHER M. CARR
Attorney General
*State of Georgia*

DREW H. WRIGLEY
Attorney General
*State of North Dakota*

BRENNA BIRD
Attorney General
*State of Iowa*

ALAN WILSON
Attorney General
*State of South Carolina*

TODD ROKITA
Attorney General
*State of Indiana*

JONATHAN SKRMETTI
Attorney General
*State of Tennessee*

JEFF LANDRY
Attorney General
*State of Louisiana*

KEN PAXTON
Attorney General
*State of Texas*

LYNN FITCH
Attorney General
*State of Mississippi*

SEAN D. REYES
Attorney General
*State of Utah*

ANDREW BAILEY
Attorney General
*State of Missouri*

PATRICK MORRISEY
Attorney General
*State of West Virginia*

AUSTIN KNUDSEN
Attorney General
*State of Montana*

## CERTIFICATE OF COMPLIANCE

Pursuant to Fed. R. App. P. 32(a), and Tenth Circuit Rule 32-1, I certify that the attached response brief is proportionately spaced, has a typeface of 14 points or more, and contains 3,597 words.

Date: November 20, 2023.

*/s/ Erin B. Gaide*

Erin B. Gaide

## CERTIFICATE OF DIGITAL SUBMISSION

I hereby certify that with respect to the foregoing: (1) all required privacy redactions have been made per 10th Cir. R. 25.5; (2) if required to file additional hard copies, that the ECF submission is an exact copy of those documents; (3) the digital submissions have been scanned for viruses with the most recent version of a commercial virus scanning program, Sophos Endpoint Agent, and according to the program are free of viruses.

*/s/ Erin B. Gaide*

Erin B. Gaide

**CERTIFICATE OF SERVICE**

I hereby certify that on November 20, 2023, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Tenth Circuit by using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

*/s/ Erin B. Gaide*

Erin B. Gaide